**[This opinion has been published in *Ohio Official Reports* at 89 Ohio St.3d 210.]**

OFFICE OF DISCIPLINARY COUNSEL *v.* ZINGARELLI.

[Cite as *Disciplinary Counsel v. Zingarelli*, 2000-Ohio-140.]

*Attorneys at law—Misconduct—Indefinite suspension—Engaging in dishonest and deceitful conduct—Engaging in conduct prejudicial to the administration of justice—Practicing law in a jurisdiction where to do so would be in violation of the regulations of the profession in that jurisdiction—Failing to disclose information required by law to be disclosed—Commingling funds—Improper division of attorney fees—Failing to promptly return unearned fee after withdrawal from employment—Charging a clearly excessive fee—Without solicitation, recommending one's self for employment to a nonlawyer—Harm to a client is not a necessary element of a violation of DR 9-102(A).*

Harm to a client is not a necessary element of a violation of DR 9-102(A).  (*Erie-Huron Counties Joint Certified Grievance Commt. v. Miles* [1996], 76 Ohio St.3d 574, 577, 669 N.E.2d 831, 833, approved and followed.)

(No. 99-1957—Submitted February 8, 2000—Decided June 14, 2000.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 98-95.

————————

{¶ 1} In an amended complaint[1] filed April 28, 1999, relator, Office of Disciplinary Counsel, charged respondent, Larry R. Zingarelli of Kapolei, Hawaii, formerly of Columbus, Ohio, Attorney Registration No. 0003224, with four counts of professional misconduct.

{¶ 2} In the amended complaint, Count One charged respondent with violating DR 1-102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), DR 1-102(A)(5) (engaging in conduct that is prejudicial to the administration of justice), DR 3-101(B) (practicing law in a jurisdiction where to do so would be in violation of regulations of the profession in that jurisdiction), and DR 7-102(A)(3) (while representing a client, concealing or knowingly failing to disclose that which he is required by law to reveal).  Count Two charged respondent with violating DR 1-102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), DR 2-106(A) (entering into an

———

1. On November 30, 1998, relator filed an original complaint against respondent.  The original complaint charged respondent with four counts of professional misconduct.  On April 28, 1999, relator filed an amended complaint wherein Count Three from the original complaint was omitted, Count Four from the original complaint was renumbered Count Three, and a new Count Four was added.  The amended complaint also refined the charges with respect to the already existing counts.

agreement for, charging, or collecting an illegal or clearly excessive fee), DR 2-107(A) (dividing fees with lawyers who are not in the same firm without prior consent of the client and without satisfying the other requirements of DR 2-107[A][1] through [3]), DR 2-110(A)(3) (withdrawing from employment without promptly refunding any part of fee paid in advance that had not been earned), and DR 9-102(A) (failing to deposit all funds of clients paid to a lawyer or law firm, other than advances for cost and expenses, into one or more identifiable bank accounts in which no funds belonging to the lawyer or law firm are deposited). Count Three charged respondent with violating DR 1-102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), DR 1-102(A)(5) (engaging in conduct that is prejudicial to the administration of justice), DR 2-103(A) (recommending employment, as a private practitioner, of himself or herself, or his or her partner or associate to a nonlawyer who has not sought the lawyer's advice regarding employment of a lawyer, except as provided in DR 2-101), and DR 3-101(B) (practicing law in a jurisdiction where to do so would be in violation of the regulations of the profession in that jurisdiction). Count Four charged respondent with violating DR 1-102(A)(5) (engaging in conduct that is prejudicial to the administration of justice), and DR 1-102(A)(6) (engaging in any other conduct that adversely reflects on the lawyer's fitness to practice law). On May 17 and 18, 1999, a hearing on the complaint was held by a panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court. The three-member panel heard this matter upon stipulations, testimony, and other evidence.

{¶ 3} Before the foregoing allegations of misconduct, respondent was disciplined twice for unrelated instances of professional misconduct. By order issued February 18, 1998, respondent was suspended from the practice of law for two years. *Disciplinary Counsel v. Zingarelli* (1998), 81 Ohio St.3d 86, 689 N.E.2d 545. By order issued April 22, 1998, respondent was also publicly reprimanded. *Columbus Bar Assn. v. Klos* (1998), 81 Ohio St.3d 486, 692 N.E.2d 565. The alleged misconduct of respondent that is now before us occurred during respondent's previous two-year suspension.

{¶ 4} Each of the four counts of the amended complaint is based upon a separate set of facts and circumstances. The four independent matters are set forth below.

Count One—The James Dicks, Jr., Matter

{¶ 5} On April 23, 1998, more than two months following his suspension from the practice of law, respondent conducted an interview with James Dicks, Jr., for an attorney position in the law offices located at 3040 Riverside Drive, Columbus, Ohio. According to Dicks's testimony before the panel, respondent did

not tell Dicks during the interview that respondent's license to practice law had been suspended or that he was conducting the interview on behalf of attorney Dennis McGuire.[2] Dicks also testified that during Dicks's interview, respondent discussed how Dicks would be compensated.

{¶ 6} On April 27, 1998, respondent's wife, Kathy, who was the office manager at the law offices, telephoned Dicks and asked him to begin working immediately. Dicks agreed and reported to work at 8:00 a.m. on April 28, 1998. During his short term of employment at the law offices, Dicks participated in at least two client interviews with respondent. At these interviews, respondent discussed facts with clients, as well as potential claims and remedies.

{¶ 7} On or about May 4, 1998, Dicks and respondent conducted an interview with a new client, Benjamin Keller. During Keller's interview, Dicks took notes while respondent reviewed a fee agreement with Keller. Respondent explained to Keller that a letter to Keller's employer would be written in exchange for a requested $500 legal fee. Respondent did not tell Keller during the interview that he was suspended from the practice of law. At the interview, respondent also completed a fee-agreement form by inserting the amount of the agreed-upon fee. The fee agreement also indicated that Dicks and McGuire would be Keller's attorneys. Even though McGuire was not present at the meeting, Keller signed the fee agreement and wrote a $500 check payable to McGuire. Keller's check was deposited in respondent's bank account.

{¶ 8} Dicks and respondent also conducted a meeting with an existing client, Rose Hrehov, on May 4, 1998. Hrehov had an employer-initiated disciplinary hearing scheduled for the next morning and desired legal representation at the hearing. Before the meeting, Hrehov heard a rumor that respondent's license to practice law had been suspended. According to Hrehov's testimony, however, respondent never told her that he was suspended; rather, respondent indicated only that he had ceased practicing law. During her meeting with respondent, Hrehov paid $1,000 as a retainer for legal services to be performed in her disciplinary proceedings.

{¶ 9} On the morning of Hrehov's hearing, respondent advised Dicks that he would not be attending the hearing and that Dicks would be handling the Hrehov matter by himself. Dicks had previously expected that he and respondent would jointly handle Hrehov's hearing. Before the hearing, respondent gave Dicks a statement that respondent had prepared for use at Hrehov's hearing. Dicks attended

---

2. Respondent and McGuire are not and have not been members of the same law firm. At various times, respondent, McGuire, and others were affiliated in an independent-contractor/office-sharing arrangement.

Hrehov's hearing on Hrehov's behalf, but he was never compensated for his services.

{¶ 10} On May 6, 1998, Dicks learned from attorney McGuire of respondent's suspension from the practice of law. The next day, Dicks resigned from his employment at the law offices.

{¶ 11} Based upon the foregoing evidence, the panel concluded that respondent's failure to cease the practice of law following his suspension and his continuing failure to inform Dicks and others entitled to know of his suspension violated the Disciplinary Rules as charged in Count One.[3] The Board of Commissioners on Grievances and Discipline of the Supreme Court adopted the findings of fact and conclusions of law of the panel with regard to Count One and in addition found a violation of DR 3-101(B) as charged.

Count Two—The Bennie A. Matthews, Sr., Matter

{¶ 12} On January 30, 1998, Bennie A. Matthews, Sr., entered into an attorney-client relationship with respondent. Matthews and respondent executed a fee agreement, wherein respondent was the only attorney named. Pursuant to the terms of the fee contract, Matthews agreed to pay respondent a $5,000 retainer ($3,000 down and $200 per month), $175 per hour for in-court time, and $125 per hour for other time, and a 33⅓ percent contingent fee. The fee agreement also provided that "[t]he Client grants the Attorney [respondent] the right to have associates work on the case or to refer any or all of the above claims to other attorneys to work in cooperating [*sic*] with the Attorney." The final paragraph of the fee agreement states: "Client consents to the division of fees between *NA* and Mr. Zingarelli as follows: *NA%* of all fees to *NA*, *NA%* of all fees to Mr. Zingarelli. Both *NA* and Mr. Zingarelli assume full responsibility for services rendered under this agreement. The retainer herein is not to be regarded as non refundable."

{¶ 13} After signing the fee agreement, Matthews paid respondent $3,000. Respondent deposited the $3,000 that he received from Matthews into his office account, titled "Larry R. Zingarelli, Attorney at Law" ("office account"). At the time of this deposit, respondent's personal funds were also in his office account. Respondent did not maintain an IOLTA (trust) account.

{¶ 14} From approximately mid-December 1997 to February 20, 1998, attorney David Villwock maintained a business relationship with respondent. The business relationship consisted of respondent's providing Villwock with free office space and Villwock's assisting respondent on his cases. Villwock and respondent agreed that Villwock would be compensated by a percentage of the case fee, or by

---

3. While the amended complaint charged a violation of DR 3-101(B), the panel made no ruling with regard to that charge.

4

an hourly rate, depending upon the specific case. Respondent and Villwock were not members of the same law firm at any time.

{¶ 15} Approximately two weeks after respondent's initial meeting with Matthews, respondent directed Villwock to interview Matthews for the purpose of preparing a complaint. During Villwock's meeting with Matthews, respondent presented Villwock with a $1,000 check. Villwock's understanding was that the $1,000 was a payment toward his percentage of the fees in the Matthews case. Matthews's fee agreement was never changed to include Villwock or any attorney other than respondent. Both Villwock and respondent, after Villwock's meeting with Matthews, did additional work on the Matthews case.

{¶ 16} On February 28, 1998, ten days after respondent had been suspended from the practice of law, respondent accepted a $200 check from Matthews and deposited the check into his office account. On or about March 20, 1998, respondent mailed Matthews a letter informing him that respondent had been suspended from the practice of law.

{¶ 17} On March 21, 1998, respondent received a letter from Matthews in which Matthews requested a refund of the money he had paid respondent. Thereafter, respondent spoke with Matthews on the telephone regarding the request. During this conversation, which Matthews taped without respondent's consent, respondent discussed the number of hours that he and the other attorneys (Villwock, McGuire, and one Dan Klos) had spent on the case. Respondent indicated that he would send Matthews a refund check for $1,350. On or about April 29, 1998, Matthews filed a grievance against respondent.

{¶ 18} On May 4, 1998, respondent mailed a letter to Matthews's new counsel, attorney Avery Friedman. In the letter, respondent stated that seventeen hours had been devoted to the Matthews matter. Contrary to what respondent previously had told Matthews, respondent stated, "As you can see, based on hours, Mr. Matthews actually owes us a balance, but we will call it even." On July 23, 1998, over four months after Matthews's initial request, respondent mailed Matthews a letter and refund check for $935. The check was written on the office account, designated "Larry R. Zingarelli, Attorney at Law."

{¶ 19} In July 1998, at relator's request, respondent prepared a fee statement for the Matthews case. The fee statement indicated that respondent and attorneys Villwock, McGuire, and Klos had spent approximately 33.5 hours on the Matthews matter. In sum, respondent provided at least four inconsistent explanations for the hours he tabulated and the corresponding fees that he charged in the Matthews case.

{¶ 20} With regard to the Matthews matter, the panel concluded that respondent had violated DR 2-107(A) (improper division of attorney fees), DR 2-110(A)(3) (failure to promptly return unearned fee after withdrawing from employment), and DR 9-102(A) (commingling funds). The panel did not address respondent's alleged violation of DR 1-102(A)(4) (engaging in dishonest or deceitful conduct) or DR 2-106(A) (charging a clearly excessive fee).

{¶ 21} Thereafter, the board concluded that respondent had violated all of the Disciplinary Rules as charged. The board concluded that respondent had commingled Matthews's money with respondent's personal funds by maintaining only one bank account and by paying both personal and business expenses from the account. With respect to Matthews's fee agreement and respondent's division of the fees paid to him by Matthews, the board concluded that respondent had failed to comply with DR 2-107(A). The board also found that the total fee charged to Matthews was excessive, in violation of DR 2-106(A). The board further concluded that respondent's failure to refund the unearned portion of Matthews's fee until July 23, 1998, was not prompt, in violation of DR 2-110(A)(3). Last, the board found that respondent had acted dishonestly in providing four different explanations for the fees charged in the Matthews case, in violation of DR 1-102(A)(4).

Count Three—The Kristine Blaine Matter

{¶ 22} For approximately five and one-half years, until about March 31, 1998, attorney Dan Klos and respondent shared office space at 3040 Riverside Drive, Suite 103, Columbus, Ohio. During Klos and respondent's office-sharing relationship and before respondent was suspended from the practice of law, Klos and respondent acted as cocounsel on all but one of Klos's cases.

{¶ 23} In late March 1998, during respondent's suspension, Kristine Blaine was referred to respondent. After attempting to make an appointment with respondent, Blaine was referred to Klos, whom she met with and eventually retained. On the same day, Blaine issued a $500 retainer check to Klos, but Blaine requested that the check not be cashed until after April 1, 1998.

{¶ 24} On or about March 31, 1998, at respondent's direction, Klos endorsed Blaine's check payable to respondent. Although Klos did not believe that he owed respondent any money at the time, respondent claimed to make the request because of an outstanding debt due him by Klos. Respondent deposited Blaine's check in his office account. Thereafter, Blaine's check was returned to respondent by the bank for insufficient funds.

{¶ 25} After receiving the returned check, respondent left a message for Blaine at her home, advising her of the returned check and demanding that Blaine

forward $6 for the insufficient-funds charge. Blaine testified that she was shocked about respondent's message regarding the insufficient-funds charge because Klos, not respondent, was her attorney, and Klos had agreed not to cash the check until his office was notified by Blaine. Nevertheless, Blaine returned respondent's telephone call. During this call, respondent advised Blaine that Klos was no longer with respondent's office. According to Blaine, respondent then offered to represent her. Blaine agreed to be represented by respondent under the belief that respondent was recommending himself to her as her attorney.

{¶ 26} Respondent also asked Blaine to write a short note indicating that she wanted McGuire, another attorney in respondent's office, to represent her. Respondent advised Blaine that the note was necessary in order to "cover him." Blaine did not know McGuire at the time of respondent's request for the note. Although Blaine wrote the note that respondent requested, she did not mail it to respondent. Klos ultimately represented Blaine in her case.

{¶ 27} Based on the foregoing, the panel concluded that respondent had violated each of the Disciplinary Rules as charged in Count Three, with the exception of DR 3-101(B) (practicing law in a jurisdiction in violation of a regulation of the profession of that jurisdiction). The panel concluded that respondent had violated DR 1-102(A)(5) by trying to convince Blaine that she should fire Klos and hire respondent. The panel also found that by recommending himself for legal services to Blaine, who had not sought respondent's advice, respondent had violated DR 2-103(A). Respondent also failed to inform Blaine that his license to practice law was suspended. By offering to represent Blaine when his license was suspended, the panel concluded, respondent had engaged in dishonest conduct in violation of DR 1-102(A)(4). The board adopted the panel's findings and conclusions on Count Three.

Count Four—The Dan Klos Matter

{¶ 28} Respondent was charged with two Disciplinary Rule violations in Count Four with respect to his conduct with attorney Dan Klos. After considering the alleged violations, the panel found that relator had failed to establish any violation of the Disciplinary Rules by clear and convincing evidence. The board adopted the findings and conclusions of the panel on Count Four.

{¶ 29} Based upon the foregoing, as well as the mitigation evidence presented by respondent, the panel recommended that respondent be permanently disbarred from the practice of law. The board adopted the panel's recommendation, and the board also recommended that the cost of the disciplinary proceedings be taxed to respondent.

---

*Jonathan E. Coughlan*, Disciplinary Counsel, and *Lori J. Brown*, First Assistant Disciplinary Counsel, for relator.

*William J. O'Malley*, for respondent.

_____

**DOUGLAS, J.**

{¶ 30} Respondent objects to the board's findings of fact and conclusions of law with respect to Count One, Count Two, and Count Three. Alleging that the board failed to consider any of the mitigation evidence presented by respondent, particularly the evidence regarding respondent's bipolar disorder, respondent also objects to the board's recommendation of permanent disbarment.

I

{¶ 31} With regard to the board's conclusion that respondent violated the Disciplinary Rules as charged in Count One, respondent argues that (1) he was not practicing law by briefly attending two client meetings and (2) he had no obligation to tell people whom he did not represent that his license to practice law had been suspended. We do not find respondent's arguments to be well taken, for the reasons that follow.

{¶ 32} The court has repeatedly defined what constitutes the "practice of law." In *Land Title Abstract & Trust Co. v. Dworken* (1934), 129 Ohio St. 23, 1 O.O. 313, 193 N.E. 650, at paragraph one of the syllabus, the court said that the practice of law "embraces the preparation of pleadings and other papers incident to actions and special proceedings and the management of such actions and proceedings on behalf of clients * * * and *in general all advice to clients and all action taken for them in matters connected with the law*." (Emphasis added.) In *Akron Bar Assn. v. Greene* (1997), 77 Ohio St.3d 279, 280, 673 N.E.2d 1307, 1308, we also indicated that the practice of law "includes the conduct of litigation and those activities which are incidental to appearances in court."

{¶ 33} Pursuant to the long-standing authority of *Dworken*, respondent's actions in the Keller and Hrehov matters amount to the practice of law. The board concluded that while respondent's license to practice law was suspended, he conducted client interviews wherein he discussed facts, potential claims, and potential legal remedies of clients' potential cases, discussed and completed fee agreements for clients, and prepared a legal statement for a client's (Hrehov's) disciplinary hearing. In response to the board's findings, respondent contends that the board disregarded his testimony regarding his interaction with Keller and Hrehov, which supports a much less active, and professionally proper, role. Contrary to respondent's arguments, it is of no consequence that the board's findings of fact are in contravention of respondent's or any other witness's

testimony. "Where the evidence is in conflict, the trier of facts may determine what should be accepted as the truth and what should be rejected as false." *Cross v. Ledford* (1954), 161 Ohio St. 469, 478, 53 O.O. 361, 365, 120 N.E.2d 118, 123-124, quoted in *Columbus Bar Assn. v. Elsass* (1999), 86 Ohio St.3d 195, 198, 713 N.E.2d 421, 424.

{¶ 34} Having heard the witnesses first-hand, the panel made the foregoing findings of fact after determining that the evidence of respondent's misconduct was sufficiently clear and convincing. The panel's findings were subsequently adopted by the board. We find no reason to disturb the board's findings as they relate to Count One, and we accordingly defer to and adopt them. Having adopted the board's findings, we conclude that respondent's conduct with respect to Keller and Hrehov constituted the practice of law as has been broadly defined by this court for many decades.

{¶ 35} The only remaining issue with respect to Count One is whether respondent had a duty to truthfully communicate the status of his license to practice law to Dicks and Keller. Respondent denies that he had a duty to inform Dicks and Keller of his suspension because respondent did not represent them. In addition to having already determined that respondent did engage in the practice of law with respect to Keller, we find that respondent's argument is not well taken, as his duty to inform Dicks and Keller of his suspension was independent of whether respondent represented Dicks and Keller. See, *e.g., Columbus Bar Assn. v. Elsass*, 86 Ohio St.3d at 199, 713 N.E.2d at 424-425 (violation of DR 1-102[A][4]).

{¶ 36} Although respondent's suspension order did not specifically instruct him that he had a duty to inform persons other than current clients and opposing counsel of his suspension, respondent did have a professional responsibility to provide accurate and honest information regarding the status of his law license. DR 1-102(A)(4) forbids a lawyer to "engage in conduct involving dishonesty, fraud, deceit, or misrepresentation." By telling Dicks and Keller that he was retiring from the practice of law, rather than telling them that he was suspended from the practice of law, respondent was dishonest and deceitful, and thus in violation of DR 1-102(A)(4). As noted by relator, "retiring" connotes a *future* intention on the part of respondent to discontinue his law practice. That depiction failed to properly present the status of respondent's license to practice law. Therefore, the presumption would have been that respondent was currently licensed and authorized to practice. In engaging in this conduct, respondent acted dishonestly and deceitfully toward Dicks and Keller.

{¶ 37} For the foregoing reasons, we adopt the conclusions of law by the board that respondent violated DR 1-102(A)(4) (engaging in dishonest and

deceitful conduct), DR 1-102(A)(5) (engaging in conduct prejudicial to the administration of justice), DR 3-101(B) (practicing law in a jurisdiction where to do so would be in violation of the regulations of the profession in that jurisdiction), and DR 7-102(A)(3) (in the representation of a client, failing to disclose information when the law requires disclosure) with respect to Count One.

II

{¶ 38} Respondent submits a separate objection to four of the five disciplinary violations in Count Two.[4] With respect to respondent's alleged violation of DR 9-102(A) (commingling funds), respondent contends that it is irrelevant that he deposited Matthews's payments into his office account, which contained personal and other business monies. Respondent feels that because he maintained a substantial balance that was always enough to return to Matthews all of the retainer, and because Matthews's retainer would be "eaten up" in the first few weeks of respondent's representation of Matthews, no improper conduct occurred. Respondent is mistaken. Whether Matthews was actually harmed by respondent's misconduct is not germane to the determination of whether respondent's actions violated DR 9-102(A).

{¶ 39} DR 9-102(A) instructs that "[a]ll funds of clients paid to a lawyer or law firm, other than advances for costs or expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and *no funds belonging to the lawyer or law firm shall be deposited therein* * * * ." (Emphasis added.) Respondent admitted depositing Matthews's money into respondent's office account, which contained other business money and personal funds. Since the agreed-upon fee had not yet been earned and was therefore refundable at the time respondent made the deposit, respondent violated DR 9-102(A) by commingling Matthews's money with his own. Accordingly, we hold that harm to a client is not a necessary element for there to be a violation of DR 9-102(A).

{¶ 40} With respect to the violation DR 2-107(A) (improper division of attorney fees), respondent contends that it was not unethical to pay Villwock from the fees that Matthews had paid to him because Matthews was aware of Villwock's involvement and Matthews consented to Villwock's payment. We disagree. Recalling that Villwock and respondent were not members of the same law firm, we find that respondent, regardless of whether Matthews was aware of Villwock's involvement, had a duty to comply with DR 2-107(A).

---

4. As to the final violation in Count Two, DR 2-106(A) (charging a clearly excessive fee), respondent makes no explicit separate objection, although he does argue that the fee was reasonable, and even low. We agree with the board that the fee was clearly excessive.

{¶ 41} In relevant part, DR 2-107(A) allows lawyers who are not in the same law firm to share fees, but only if the client consents and the terms of the division and the identity of all lawyers sharing in the fee are fully disclosed in writing to the client. In *King v. Housel* (1990), 52 Ohio St.3d 228, 230, 556 N.E.2d 501, 504, we rejected the contention that DR 2-107(A) would be satisfied if the retained attorney informed his client only that another attorney would be paid for assisting the retained attorney. The court stated that the duty of full disclosure pursuant to DR 2-107(A) requires that "the amount to be paid and manner of payment, as well as other relevant fee agreements, be disclosed to the client by his attorney." *Id.* at paragraph one of the syllabus. Here, respondent was the attorney retained by Matthews; thus, it was his responsibility to comply with all of the fee-sharing disclosure requirements of DR 2-107(A)(1) through (3). *Id.* At a minimum, respondent violated DR 2-107(A) by failing to disclose in writing Villwock's identity and Villwock's portion of the fees.

{¶ 42} Respondent next maintains that he returned Matthews's unearned fee in a timely manner and therefore did not violate DR 2-110(A)(3), which requires a prompt return of any unearned fee after a lawyer withdraws from employment. We do not agree that respondent returned Matthews's fee promptly. Respondent was required to return Matthews's unearned fee on the date of his suspension, February 18, 1998. Since respondent did not return Matthews's unearned fee until July 23, 1998, we agree with the board and adopt its conclusion of law that respondent violated DR 2-110(A)(3).

{¶ 43} With respect to DR 1-102(A)(4) (engaging in dishonest or deceitful conduct), respondent asserts that there was no clear and convincing evidence of any violation. As previously discussed, respondent provided at least four inconsistent explanations for his billing in the Matthews matter. Having initially advised Matthews that he had expended his initial retainer, respondent ultimately sent Matthews a refund check of $935 without any further explanation. Respondent, in his objections to the board's recommendation, attempts to explain the discrepancies by referring to the billing variations as "three offers of compromise." Respondent's billing, however, should have been based upon the precise terms in the Matthews's fee agreement, and not on a barter system designed by respondent. In considering respondent's arguments, we find respondent's various explanations for the Matthews billings to be acts of dishonesty, and not offers of compromise. For all of the foregoing reasons, we adopt the conclusions of law by the board that respondent violated DR 9-102(A) (commingling funds), DR 2-107(A) (improper division of attorney fees), DR 2-110(A)(3) (failure to promptly return unearned fee after withdrawing from employment), DR 2-106(A) (charging a clearly excessive

fee), and DR 1-102(A)(4) (engaging in dishonest and deceitful conduct) with respect to Count Two.

### III

{¶ 44} Respondent disputes the findings of fact with respect to Count Three based upon the panel's exclusive reliance on Blaine's testimony. Count Three included violations of DR 1-102(A)(5) (engaging in conduct prejudicial to the administration of justice), DR 2-103(A) (without solicitation, recommending one's self for employment to a nonlawyer), and DR 1-102(A)(4) (engaging in dishonest and deceitful conduct). For the same reasons discussed herein with respect to Count One, the court declines to overturn the panel's findings when it was the panel members, and not this court, who had the opportunity to evaluate the character and demeanor of the witnesses. After evaluating the witnesses, the panel found Blaine to be more credible than respondent. We therefore reject respondent's objections, as there is clear and convincing evidence to support the panel's findings of fact. Further, we adopt the conclusions of law by the board that respondent violated three of the four Disciplinary Rules stated in Count Three.

### IV

{¶ 45} In the next section of objections, respondent proffers two obscure due process arguments in which he claims that the disciplinary proceeding was tainted and that he was prejudiced throughout the disciplinary proceeding. Respondent suggests that he was denied due process when his office account records were subpoenaed and when Count Four was added late to relator's amended complaint. Since the board found no violations of the Code of Professional Responsibility with respect to Count Four, we find it unnecessary to discuss respondent's arguments related to the addition of Count Four.

{¶ 46} With regard to respondent's office account bank records, respondent contends that he was deprived of his due process rights because he had to defend against issues relating to his office account that were not alleged in relator's amended complaint. We do not find any merit in respondent's argument, as relator's subpoena to the bank for the production of the account records and certain canceled checks was related to the allegations against respondent for commingling funds and practicing law after his suspension. Thus, we conclude that respondent's due process rights were not compromised as a result of the subpoena to the bank to produce the office account records, and that the board did not err in considering respondent's bank account records.

{¶ 47} Respondent's final argument is that he was denied due process as a result of Justice Evelyn Lundberg Stratton's participation in this court's prior

decision imposing a two-year suspension upon respondent.[5] Respondent submits that Justice Lundberg Stratton was biased against him, as she was the trial judge in the underlying case from which respondent's first disciplinary charges arose. As a result of the justice's involvement with respondent as the trial judge, respondent claims, his substantive due process rights were violated because Justice Lundberg Stratton was a biased decisionmaker in respondent's prior disciplinary proceeding.

{¶ 48} For the reasons that follow, we find that respondent was not deprived of his substantive due process rights as he alleges. There is *no* evidence of any substantive prejudice to respondent in connection with his prior disciplinary case. In fact, in *Disciplinary Counsel v. Zingarelli* (1998), 81 Ohio St.3d 86, 689 N.E.2d 545, we issued a six-to-one decision suspending respondent for two years. Although Justice Lundberg Stratton was in the majority of that decision, there is no evidence to support the contention that our ruling would have been different if Justice Lundberg Stratton had not participated. Further, we agree with relator that respondent's arguments are impermissible collateral attacks on this court's previous decision. Accordingly, respondent's objections and arguments are rejected as procedurally improper and substantively insufficient.

V

{¶ 49} We now come to the issue of what penalty is appropriate in light of respondent's professional misconduct. After considering all of the evidence and the mitigating circumstances presented, both the panel and board recommended that respondent be permanently disbarred from the practice of law.

{¶ 50} In *Dayton Bar Assn. v. Shaman* (1997), 80 Ohio St.3d 196, 201, 685 N.E.2d 518, 521, we stated that "when imposing a sanction, we will consider not only the duty violated, but the lawyer's mental state, the actual injury caused, and whether mitigating factors exist." The underlying disciplinary violation is respondent's continued practice of law while under suspension. In addition, however, respondent violated a number of other Disciplinary Rules.

{¶ 51} In this case, we acknowledge respondent's bipolar disorder which *contributed* to respondent's misconduct, and, accordingly, the respondent is indefinitely suspended from the practice of law in Ohio.

*Judgment accordingly.*

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER and KNEPPER, JJ., concur.

COOK, J., dissents.

RICHARD W. KNEPPER, J., of the Sixth Appellate District, sitting for LUNDBERG STRATTON, J.

---

5. It should be noted that Justice Lundberg Stratton has recused herself in the instant case and has taken no part in the court's deliberations.

---