CLEVELAND METROPOLITAN BAR ASSOCIATION *v.* DAVIE ET AL.

[Cite as *Cleveland Metro. Bar Assn. v. Davie,*

133 Ohio St.3d 202, 2012-Ohio-4328.]

*Unauthorized practice of law—Paralegals—Preparing pleadings and other documents on behalf of other persons—Appearing on  behalf of another at parole hearing—Receiving financial compensation for services—Respondents enjoined from further acts constituting unauthorized practice of law—Civil penalty imposed.*

(No. 2011-1681—Submitted January 18, 2012—Decided September 27, 2012.)

ON FINAL REPORT by the Board on the Unauthorized Practice of Law of the

Supreme Court, No. UPL 09-07.

————————————

**Per Curiam.**

**{¶ 1}** On December 23, 2009, relator, Cleveland Metropolitan Bar Association, filed a three-count complaint with the Board on the Unauthorized Practice of Law against respondents, Michael D. Davie and his company, Alpha Legal Services, Inc. ("ALS").[1]  The complaint alleged that Davie, a paralegal who is not licensed to practice law in the state of Ohio, prepared pleadings and other legal documents for three persons in separate cases, appeared at an Ohio Parole Board hearing on behalf of another, and twice received financial compensation for his services.

**{¶ 2}**  After conducting a hearing, the panel submitted a report to the board finding that while doing business as ALS, Davie engaged in the

_____

1. The corporation is registered with the secretary of state as "Alpha Legal Services, Inc.," but Davie's correspondence and other documents consistently refer to it as Alpha Legal Service.  We will use the official name registered with the state.

unauthorized practice of law as alleged in the first two counts. But citing the insufficiency of the evidence, the panel voted to dismiss Count Three of relator's complaint. The panel recommended that we enjoin the illegal acts of respondents, impose a civil penalty of $2,000 for each of the two violations, require respondents to refund all fees received in connection with these matters, and further require Davie to notify the Cleveland Municipal Court in writing that the judgments he obtained against the affected clients have been satisfied.

{¶ 3} The board adopted the panel's findings of fact and conclusions of law, but citing numerous aggravating factors, modified the sanction to recommend that we impose the maximum civil penalty of $10,000 for each of respondents' offenses.

{¶ 4} Relator objects to the recommendation that Count Three be dismissed and asks us to find that respondent engaged in the unauthorized practice of law with respect to that count. Despite having stipulated to an extension of time to file a response to the objections, neither Davie nor ALS has responded. Relator argues that despite Davie's admission at the parole board hearing that he was not an attorney, the memorandum he submitted prior to that hearing was designed to give the impression that he was an attorney representing the inmate seeking parole. Therefore, relator contends that we should find that Davie and ALS engaged in the unauthorized practice of law with respect to Count Three.

{¶ 5} We adopt the board's findings of fact, conclusions of law, and recommended sanction with respect to Counts One and Two of relator's complaint, with the exception that we do not order restitution. And for the reasons that follow, we sustain relator's objections and find that respondents engaged in the unauthorized practice of law as alleged in Count Three. Therefore, in addition to the sanction recommended by the board, we impose a $10,000 civil penalty for that conduct.

**Davie and ALS**

{¶ 6}   In 1992, Davie began serving a 33-to-75-year sentence following his convictions for an array of offenses, including attempted murder, aggravated burglary, and aggravated robbery.   While in prison, he took paralegal correspondence courses from Blackstone School of Law.   In 2006, after serving 14 years of his sentence, Davie received parole.   At all times relevant to this matter, he was registered with the Ohio State Bar Association as a paralegal, with the registration number 101919.

{¶ 7}   ALS is an Ohio corporation formed, owned, operated, and controlled by Davie for the purpose of "provid[ing] legal consulting and ancillary services to Attorneys, Organizations, pro se and indigent litigants."   Following his release from prison, respondent Davie began doing business as ALS in Shaker Heights, Ohio.   Respondents, Davie and ALS, are not, nor have they ever been, attorneys admitted to the practice of law in Ohio pursuant to Gov.Bar R. I, registered pursuant to Gov.Bar R. VI, or certified pursuant to Gov.Bar R. II, IX, or XI.   Nor are they admitted to the practice of law in any other state.

**The Brown/Stephens Matter**

{¶ 8}   On March 1, 2008, Tiona Brown executed a written contract with respondents in which she agreed to pay $1,500 for services, including "interviews, legal research & preparation of pretrial motion to suppress" for her incarcerated boyfriend, DeCharles Stephens.   The records produced by Davie show that on June 2, 2008, Brown paid him $100.

{¶ 9}   Davie visited Stephens in jail to discuss his criminal case, advised him about his plea, and performed legal research for a motion to suppress evidence that he filed on Stephens's behalf.   Although Stephens was represented by a public defender, Davie claimed that his own work was supervised by another attorney, Sebraien Haygood.   And although Davie admitted that he had contracted

to draft a pretrial motion to suppress evidence, he testified that it was Haygood who had actually prepared that motion.

{¶ 10} Davie admitted that Haygood was not present during his initial meeting with Brown, did not accompany him to visit Stephens in jail, and, to Davie's knowledge, never had any communications with Brown. Haygood's name does not appear in Davie's contract with Brown or in any other document that Davie has provided to relator. Davie claimed that the relevant documentation was lost when ALS was evicted from its office. But the testimony of Davie's father-in-law, Bishop David Lee Owens, placed the eviction in 2007—the year before respondents undertook the Brown/Stephens representation. Although Owens shared office space with respondents at all times relevant herein, he testified that he had not heard Haygood's name prior to the panel hearing and had never met him or seen him in the office. Haygood died on June 26, 2008, and therefore was unavailable to either confirm or deny claims that he supervised Davie's paralegal work.

{¶ 11} When Brown refused to pay for his services, Davie filed a breach-of-contract action in the Cleveland Municipal Court. He averred in his complaint that he had "worked to bring forth favorable results in the criminal matter of Charles [sic, DeCharles] Stephens," but did not mention Haygood. Davie obtained a $1,400 judgment against Brown.

### The Singleton Matter

{¶ 12} In April 2008, Katina and Anthony Singleton contracted with respondents for legal assistance in a custody dispute involving their son, who resided in Michigan. Their written agreement provided that in exchange for $3,500, ALS would assist in the preparation of an answer to a motion for full custody and a motion for continuance. Although the agreement stated that the work would be performed under the direction of a licensed legal professional, it did not identify Haygood or any other attorney, and further provided that the

4

agreement was "not in any way conditioned upon an attorney agreeing to have [ALS's] assistance."

**{¶ 13}** Davie filed "Defendant's Answer and Motion for MCR 2.116(C)(8) Dismissal of Plaintiff's Motion for Full Legal and Physical Custody" and a motion for continuance, both signed by Katina Singleton, in a Michigan court. He testified that he did the research for the documents, but that attorney Haygood had prepared the documents and their attachments. Haygood's name, however, does not appear on any of the documents.

**{¶ 14}** The Singletons paid Davie $500, but when they failed to pay a $3,000 invoice for his services, Davie filed suit against them. In his complaint, Davie stated that "Plaintiff rendered Defendant the requested services and worked to bring forth favorable results in the custody matter of Prude v. Singleton 98-836323-DM, State of Michigan, Third Judicial Circuit, Wayne County." Davie did not mention Haygood in his complaint, either as his supervisor or a third-party beneficiary of the collection litigation, and testified that the action was for his own benefit alone. Furthermore, Davie averred, "Defendants represented that they could not meet the expense that an attorney would charge but could meet Plaintiff's billing costs at a reduced rate of $125.00 per hour having totaled 20 hours including other out of pocket expenses."

**{¶ 15}** The magistrate presiding over the collection action issued, and the court adopted, a decision finding that Davie was practicing law without a license and granting a judgment in favor of Katina Singleton.[2] After Davie objected on the ground that the issue of the unauthorized practice of law was not properly before the court, the court vacated the judgment, and Davie later obtained a $3,000 judgment against Katina Singleton.

---

2. The court had previously dismissed the complaint as to Anthony Singleton.

{¶ 16} The panel and board found that Davie had presented conflicting explanations regarding the identity of the attorneys allegedly supervising his work. In his objections to the magistrate's decision, Davie stated, "In the present case, Plaintiff's [sic] was supervised in the Defendant's administrative-custody matter by Donald R. Murphy, Esq." At his deposition, however, he claimed that this was a "typo" and that it was Haygood who had supervised his work. And in his objections to the magistrate's decision, Davie stated that he assists pro se parties, which directly contradicts his testimony that he works under the supervision of various attorneys. The panel and board, however, found that there was no credible evidence that Haygood had supervised Davie in either the Brown or the Singleton matters and ultimately concluded that "Davie took advantage of the untimely death of Attorney Sebraien M. Haygood and fabricated testimony in an attempt to establish that Mr. Haygood was supervising him in the Brown and Singleton matters."

### Respondents' Unauthorized Practice of Law
### with Respect to the Stephens/Brown and Singleton Matters

{¶ 17} The panel and board found that respondents had not been supervised by an attorney and that no attorney had delegated the tasks performed by respondents in the Stephens/Brown or Singleton matters. Therefore, they found that respondents had engaged in the unauthorized practice of law by (1) entering into contracts to perform legal services on behalf of Stephens and Singleton, (2) researching and preparing a motion to suppress evidence in Stephens's criminal case, (3) consulting with Stephens regarding the course of legal action to be taken in his criminal case and the plea he should enter, (4) preparing and filing two documents in Singleton's custody matter—a memorandum seeking to dismiss the plaintiff's motion for full legal and physical custody and a motion for continuance—that Singleton signed and submitted to the court pro se.

{¶ 18} The Ohio Constitution, Article IV, Section 2(B)(1)(g) gives this court original jurisdiction over all matters relating to the practice of law, including the unauthorized practice of law. *Ohio State Bar Assn. v. Martin*, 118 Ohio St.3d 119, 2008-Ohio-1809, 886 N.E.2d 827, ¶ 31. Pursuant to this authority, we have defined the unauthorized practice of law as "the rendering of legal services for another by any person not admitted to practice in Ohio." *Cleveland Bar Assn. v. Pearlman,* 106 Ohio St.3d 136, 2005-Ohio-4107, 832 N.E.2d 1193, ¶ 7.

{¶ 19} The rendering of legal services includes more than the handling of cases in court. We have held that it encompasses "preparing and filing legal pleadings and other papers, appearing in court cases, and managing actions and proceedings on behalf of clients before judges, whether before courts or administrative agencies." *Cleveland Bar Assn. v. Coats*, 98 Ohio St.3d 413, 2003-Ohio-1496, 786 N.E.2d 449, ¶ 3, citing *Richland Cty. Bar Assn. v. Clapp*, 84 Ohio St.3d 276, 278, 703 N.E.2d 771 (1998); *Cincinnati Bar Assn. v. Estep*, 74 Ohio St.3d 172, 173, 657 N.E.2d 499 (1995). *Accord Cleveland Bar Assn. v. Picklo*, 96 Ohio St.3d 195, 2002-Ohio-3995, 772 N.E.2d 1187, at ¶ 5. In other words, it includes "all advice to clients and all action taken for them in matters connected with the law.*" Land Title Abstract & Trust Co. v. Dworken*, 129 Ohio St. 23, 193 N.E. 650 (1934), paragraph one of the syllabus.

{¶ 20} Although laypersons may assist lawyers in preparing legal documents to be filed in court and managing pending client matters, their activities must be carefully supervised and approved by a licensed practitioner. *Columbus Bar Assn. v. Thomas*, 109 Ohio St.3d 89, 2006-Ohio-1930, 846 N.E.2d 31, ¶ 14. In *Thomas*, we held that a paralegal's conduct in drafting pleadings and other legal documents for litigants and providing them with legal advice without a licensed attorney's supervision constituted the unauthorized practice of law. We have also recognized that a paralegal who advises and represents a claimant in a personal-injury matter without the supervision of an attorney has engaged in the

unauthorized practice of law. *Columbus Bar Assn. v. Purnell,* 94 Ohio St.3d 126, 760 N.E.2d 817 (2002).

{¶ 21} Here, Davie claims to have been supervised by Haygood, but it was Davie who made the initial contact with persons seeking legal advice and who entered into contracts to provide legal services on their behalf. Haygood was not present at those meetings, was not identified in the contracts used by Davie and ALS, let alone as the attorney supervising Davie's work, and does not appear to have had any contact with the clients. Moreover, the invoice Davie submitted in the Brown/Stephens matter, demanding payment of $1,400 for services rendered, did not identify the services provided or who provided them, and Davie admitted that neither he nor Brown had paid Haygood to draft the motion to suppress. These facts, combined with Davie's testimony that the late attorney Haygood supervised his work in just two cases—the only two in which he claimed attorney supervision—are simply not credible. In the absence of any documentary evidence to support these claims, we find that respondents contracted for and provided legal services in the Brown/Stephens and Singleton matters without any attorney supervision. Thus, they engaged in the unauthorized practice of law.

{¶ 22} Accordingly, we adopt the findings of fact and conclusions of law of the panel and board with respect to Counts One and Two of relator's complaint.

### Count Three: The Jones Matter

{¶ 23} In Count Three of the complaint, relator alleged that Davie and ALS engaged in the unauthorized practice of law by (1) preparing and filing a memorandum of support of inmate Cleophus Jones in his bid for release on parole that contained legal and persuasive arguments and intentionally gave the false impression that Davie was an attorney and (2) appearing at Jones's parole hearing on Jones's behalf.

{¶ 24} Based upon the panel's findings that Davie (1) did not refer to himself as an attorney or use the designations Esq., Atty., or J.D. in his memorandum, (2) did not attempt to portray himself as an attorney at the parole hearing, (3) disclosed early in the hearing that he was not an attorney, and (4) was authorized to represent Jones pursuant to R.C. 5149.101(B)(6), the panel determined that relator had failed to establish by a preponderance of the evidence that respondents had engaged in the unauthorized practice of law in the Jones matter. Therefore, the panel unanimously concluded that Count Three of relator's complaint should be dismissed. The board adopted the panel's findings of fact and conclusions of law with respect to this count.

*The Panel Did Not Dismiss Count Three of Relator's Complaint*

{¶ 25} The panel unanimously voted to dismiss Count Three of relator's complaint and purports to have dismissed that count by stating, "The Panel hereby dismisses the third count of the Complaint pursuant to Gov.Bar R. VII(7)(C)." Gov.Bar R. VII(7)(C) provides for unanimous dismissal by the panel of a charge of unauthorized practice of law based on the insufficiency of the evidence, but requires the panel chair to "give written notice of the action taken to the board, the respondent, the relator, all counsel of record, Disciplinary Counsel, the unauthorized practice of law committee of the Ohio State Bar Association, and the bar association serving the county or counties from which the complaint emanated." Gov.Bar R. VII(7)(F) requires the same notice when the board dismisses a charge. The record in this case, however, does not establish that either the panel or the board provided the notices required by Gov.Bar R. VII(7)(C) and (F). Therefore, we conclude that neither the panel nor the board has effectuated dismissal of this count. *See, e.g., Disciplinary Counsel v. Doellman*, 127 Ohio St.3d 411, 2010-Ohio-5990, 940 N.E.2d 928, ¶ 33 (holding that the board had not effectuated dismissal of a count in an attorney-disciplinary proceeding because the record did not demonstrate that it had given written notice

of the dismissal to certain persons and entities as required by Gov.Bar R. V(6)(K)).

*Relator's Objections to the Recommendation of Dismissal*

{¶ 26} Relator raises two objections to the board's recommendation that Count Three of its complaint be dismissed. First, relator disputes the board's finding that Davie did not intend to portray himself as an attorney by any of his actions in the Jones case. Relator argues that Davie's memorandum to the parole board evinces a purpose to induce the reader to believe that it was prepared by an attorney. Relator argues that viewed in its entirety, the memorandum shows that it was crafted to give the impression that Davie and ALS were part of the legal profession. Thus, they engaged in the unauthorized practice of law. Second, relator argues that R.C. 5149.101(B)(6) and Ohio Department of Rehabilitation and Correction ("ODRC") Policy 105-PBD-06 cannot authorize nonlawyers to engage in the practice of law. Respondents have neither objected to the board's report nor responded to relator's objections.

{¶ 27} Gov.Bar R. VII(7)(E) requires proof by a preponderance of the evidence that a respondent has engaged in the unauthorized practice of law.

{¶ 28} R.C. 4705.07(A) provides:

> No person who is not licensed to practice law in this state shall do any of the following:
>
> (1) Hold that person out in any manner as an attorney at law;
>
> (2) Represent that person orally or in writing, directly or indirectly, as being authorized to practice law;
>
> (3) Commit any act that is prohibited by the supreme court as being the unauthorized practice of law.

10

**{¶ 29}** R.C. 4705.07(B)(1) further states:

> The use of "lawyer," "attorney at law," "counselor at law," "law," "law office," or other equivalent words by any person who is not licensed to practice law, in connection with that person's own name, or any sign, advertisement, card, letterhead, circular, or other writing, document, or design, the evident purpose of which is to induce others to believe that person to be an attorney, constitutes holding out within the meaning of division (A)(1) of this section.

**{¶ 30}** And Gov.Bar R. VII(2)(A)(4) defines the unauthorized practice of law as including "[h]olding out to the public or otherwise representing oneself as authorized to practice law in Ohio by a person not authorized to practice law by the Supreme Court Rules for the Government of the Bar or Prof.Cond.R. 5.5." The rule defines "holding out" as including conduct prohibited by R.C. 4705.07(A)(1), (A)(2), and (B)(1), quoted above.

**{¶ 31}** Relator argues that like intent of the parties to a contract, the evident purpose of Davie's parole board memorandum should be determined from the four corners of the document, and that the evident purpose is a matter of law, which this court should review de novo. By way of analogy, relator cites *In re All Kelley & Ferraro Asbestos Cases,* 104 Ohio St.3d 605, 2004-Ohio-7104, 821 N.E.2d 159, ¶ 28 ("the construction of a written contract is a question of law, which we review de novo"). But Davie's memorandum is not a contract, and this is not an appeal.

**{¶ 32}** In cases involving the regulation of the practice of law, we have stated:

[I]t is true that we ordinarily accept the panel's and board's conclusions as to the propriety of an attorney's conduct or the appropriate sanction, and to that extent, our decisions reflect deference to their expertise. But as the ultimate arbiter of misconduct and sanctions in disciplinary cases, this court is not bound by factual and legal conclusions drawn by either the panel or the board. See *Cincinnati Bar Assn. v. Powers*, 119 Ohio St.3d 473, 2008-Ohio-4785, 895 N.E.2d 172, ¶ 21. Accord *Disciplinary Counsel v. Furth* (2001), 93 Ohio St.3d 173, 181, 754 N.E.2d 219; *Ohio State Bar Assn. v. Reid* (1999), 85 Ohio St.3d 327, 330, 708 N.E.2d 193. Thus, we need not defer to either's conclusions and remain free to exercise our independent judgment as to evidentiary weight and applicable law.

*Disciplinary Counsel v. Kelly*, 121 Ohio St.3d 39, 2009-Ohio-317, 901 N.E.2d 798, ¶ 11.

{¶ 33} These precepts are equally true in the context of cases involving the unauthorized practice of law. Therefore, in unauthorized-practice cases, we conduct an independent review of the alleged misconduct, the evidence adduced at the panel hearing, the findings of fact, conclusions of law, and the recommendations of the panel and board, and determine whether the respondent's conduct constituted the unauthorized practice of law. *See* Gov.Bar R. VII(19)(D)(1) (providing that the Supreme Court "shall enter an order as it finds proper"). While we give some deference to the panel's findings of fact, based upon its firsthand observation of the witnesses, we will disregard the panel's findings when the record weighs heavily against them. *Cleveland Bar Assn. v. Cleary*, 93 Ohio St.3d 191, 198, 754 N.E.2d 235 (2001), citing *Disciplinary Counsel v. Zingarelli*, 89 Ohio St.3d 210, 218, 729 N.E.2d 1167 (2000);

*Findlay/Hancock Cty. Bar Assn. v. Filkins*, 90 Ohio St.3d 1, 734 N.E.2d 764 (2000).

{¶ 34} The panel found that Jones and Davie had met while they were in prison and that both men participated in a paralegal correspondence course while incarcerated. Davie testified that after he was released, Jones asked him for assistance in typing a document for his parole hearing. Davie stated that Jones sent him a handwritten letter[3] with the information to be included in the document and that he typed the document, entitled "Memorandum in Support of Inmate Cleophus Jones No. A159-388 Consideration for Parole Release," without any attorney supervision.

{¶ 35} The memorandum, dated November 9, 2008, was printed on the letterhead of "Alpha Legal Service, Inc., Professional Legal Consulting," that bore an image of the scales of justice. Davie signed the document and included the following information in the signature block: "Alpha Legal Service, Inc., 11900 Shaker Blvd., Suite 102, Cleveland, OH 44120, Michael Davie (Bar#101919), On Behalf of Cleophus Jones, Inmate Number A159-388."

{¶ 36} The panel acknowledged that Davie's memorandum was misleading and caused some of the participants to "mistakenly assume" that Davie was an attorney, based upon his inclusion of terms like "legal service," "professional legal consulting," a picture of the scales of justice in the letterhead, and a signature block that mimics the signature block used in most legal filings and includes the attorney-registration number of the attorney filing the document. The panel, however, attributed these features to careless drafting and noted that Davie did not refer to himself as an attorney or use the designation Esq., Atty., or J.D. in his memorandum. Observing that the bar number that Davie used was the paralegal membership number assigned to him by the Ohio State Bar Association

---

3. He claimed, however, that he lost the handwritten correspondence from Jones following his eviction from his office.

("OSBA"), consisting of six digits that did not start with two zeros—unlike the seven-digit attorney-registration numbers issued by this court—the panel concluded that Davie's use of the number was not misleading.

{¶ 37} We disagree with the board's assessment of these facts and find that Davie's use of these words and images gave the distinct impression that the document had been created by an attorney. Davie signed the document in a signature block identical in form to the signature block routinely used by attorneys throughout the state—including the name of his "firm," Alpha Legal Services, Inc.—and listing a number after his name. Despite the minor differences between the OSBA paralegal-membership number Davie provided to the parole board and an attorney-registration number issued by this court, there is no mistaking that the purpose of Davie's statements is to induce others to believe that he is an attorney. Indeed, Davie's memorandum caused the chairwoman of the Ohio Parole Board to believe that he was an attorney representing Jones in his parole hearing, as evidenced by her June 9, 2009 letter addressed to "Michael Davie, Esq."

{¶ 38} In determining that Davie did not attempt to portray himself as an attorney, the panel focused on his conduct at the parole hearing, finding that Davie disclosed early in the parole board hearing that he was not an attorney and that the hearing officer personally knew him to be an ex-convict because she had presided over Davie's own parole hearing in 2006. But Davie's conduct and revelations at the hearing—more than seven months *after* he submitted his memorandum—cannot alter the evident purpose or effect of that document.

{¶ 39} The panel also found that Davie was authorized to appear at Jones's parole board hearing pursuant to R.C. 5149.101(B)(6) (permitting counsel or some other representative designated by the prisoner to appear and give testimony or submit written statements on the prisoner's behalf at the prisoners' parole hearing). The panel noted that R.C. 5149.101(B)(6) and ODRC Policy

105-PBD-06 authorize a nonattorney inmate representative to communicate with the parole board orally and in writing and that the current version of ODRC Policy 105-PBD-06 *requires* an inmate representative, prosecutors, and victim advocates to supply a "written summary of the arguments presented at the hearing for or against release." ODRC Policy 105-PBD-06(VI)(E)(4) (eff. July 8, 2011), available at http://www.drc.state.oh.us/web/ drc_policies/documents/105-PBD-06.pdf. Therefore, the panel concluded that Davie's memorandum was a written statement of an inmate representative as authorized by R.C. 5149.101(B)(6) and that it did not constitute the rendering of legal services for another in violation of Gov.Bar R. VII(2)(A). That version of the ODRC policy, however, was not in effect when Davie submitted his memorandum to the parole board, and the version then in effect had no requirement that the inmate representative submit a written summary of arguments. Rather, it *permitted* the inmate representative to submit a written statement instead of attending the hearing and providing oral testimony and information. Former ODRC Policy 105-PBD-06(VI)(D) (eff. July 2, 2008).

**{¶ 40}** Because this court has exclusive power to regulate, control, and define the practice of law in Ohio, we also have the ultimate authority to determine the qualifications of persons engaged in the practice of law before an administrative agency. *Cleveland Bar Assn. v. CompManagement*, 104 Ohio St.3d 168, 2004-Ohio-6506, 818 N.E.2d 1181 ("*CompManagement I*"), ¶ 39, quoting *In re Unauthorized Practice of Law in Cuyahoga Cty.*, 175 Ohio St. 149, 151, 192 N.E.2d 54 (1963). Even if a statute or administrative rule purports to permit laypersons to practice law before a board or an administrative agency, this court retains the ultimate authority to determine what activities a layperson may engage in without crossing the line into the unauthorized practice of law. *Dworken,* 129 Ohio St. at 31, 193 N.E. 650. Recognizing, however, that "it is not always necessary or desirable for the court to exercise that power to its full

extent," we have acknowledged that "the power to regulate includes the authority to grant as well as the authority to deny, and in certain limited settings, the public interest is better served by authorizing laypersons to engage in conduct that might be viewed as the practice of law." *CompManagement I* at ¶ 39. *See, e.g., Cleveland Bar Assn. v. Pearlman*, 106 Ohio St.3d 136, 2005-Ohio-4107, 832 N.E.2d 1193, syllabus (permitting lay representation of limited-liability companies before a small-claims court, provided that the layperson does not engage in cross-examination, argument, or other acts of advocacy); *CompManagement I*, syllabus (permitting lay representation of claimants and employers before the Industrial Commission and the Bureau of Workers' Compensation within circumscribed limits); and *Henize v. Giles*, 22 Ohio St.3d 213, 490 N.E.2d 585 (1986) (permitting laypersons to appear on another's behalf at administrative unemployment-compensation hearings before the Ohio Bureau of Employment Services and the Unemployment Compensation Board of Review to assist the claimant or the employer in the preparation and presentation of their respective versions of the circumstances attendant to the claim).

{¶ 41} In *Cleveland Bar Assn. v. CompManagement, Inc.*, 111 Ohio St.3d 444, 2006-Ohio-6108, 857 N.E.2d 95 ("*CompManagement II*"), we considered whether third-party administrators who assisted employers in workers' compensation proceedings before the Industrial Commission and the Bureau of Workers' Compensation pursuant to a commission resolution had engaged in the unauthorized practice of law. We held that third-party administrators could offer general claims assistance as long as that assistance did not involve legal analysis, skill, citation, or interpretation. *Id.* at ¶ 49, citing *Dayton Bar Assn. v. Lender's Serv., Inc.*, 40 Ohio St.3d 96, 532 N.E.2d 120 (1988), at syllabus (the mere use of legal terms as headings in a title abstract without any legal analysis does not constitute the practice of law); *State ex rel. Doria v. Ferguson*, 145 Ohio St. 12, 60 N.E.2d 476 (1945), at paragraph one of the syllabus (preparation for another of

a title report containing only facts in the public record without engaging in any legal analysis does not constitute the practice of law); *Gustafson v. V.C. Taylor & Sons, Inc.*, 138 Ohio St. 392, 397, 35 N.E.2d 435 (1941) (completion for another of preprinted forms for sale of real estate involves "ordinary intelligence rather than the skill peculiar to one trained and experienced in the law" and does not constitute the unauthorized practice of law).  Applying this standard to the facts of the case, we determined that there was no evidence that either CompManagement or its employees had committed any specific act that constituted the unauthorized practice of law.  *Id.* at ¶ 117.

{¶ 42} The version of ODRC Policy 105-PBD-06 in effect at the time of Jones's parole board hearing provided:  "The inmate does not have a right to attend a full board hearing[;] however, an inmate representative may attend to speak on behalf of the inmate.  Any additional speakers on behalf of the inmate may be approved at the discretion of the Parole Board Chair/designee."  Former ODRC Policy 105-PBD-06(VI)(F)(1) (eff. July 2, 2008).

{¶ 43} Former ODRC Policy 105-PBD-06(VI)(F)(2) identified the classes of persons who may serve as an inmate representative and provides:  "Inmate representatives must not be under the jurisdiction of the Department of Rehabilitation and Correction or any other State, Federal or County jurisdiction for having committed a felony.  Inmate representatives, for the purpose of attending full board hearings, shall be limited to family members, personal friends as designated on the institution mail and visiting list, employers, clergy, or attorneys.  Special interest groups, reform groups or other interested persons will not be permitted to serve as an inmate representative."

{¶ 44} Nothing in the former ODRC policy purported to authorize laypersons to perform any functions that would fall within the definition of the practice of law while serving as an inmate representative.  Indeed, the ODRC policy contemplated merely that an inmate representative will either attend the

full parole board hearing and provide oral testimony and information or submit a written statement for the board's consideration. *See* former ODRC Policy 105-PBD-06(VI)(D) (eff. July 2, 2008). In keeping with that policy, in his November 2008 memorandum to the parole board, Davie presented reasons that the parole board should grant Jones's release, including his employable skills, remorsefulness, and involvement with a community-reentry-support organization.

{¶ 45} But Davie went on to cite several recent parole board decisions and compared the conduct of those inmates who had been granted parole to Jones's conduct, attempted to recast the facts of Jones's crime in a light that was more favorable to Jones and contrary to the evidence supporting the conviction, argued that releasing Jones once he had served the minimum sentence of 15 years for his offense would not demean the seriousness of the offense, and asked that the board's decision be guided by the Ohio Parole Board Guidelines Manual, Part D, Section 101 (2d Ed.2000), which states, "The purpose of the guidelines is to establish Parole Board policy with respect to parole release decision-making that promote[s] the consistent exercise of discretion, and enables more fair and equitable decision-making, without removing individual case consideration." It is in these actions, involving legal citation, analysis, and interpretation, that Davie has ventured into the unauthorized practice of law. *Ohio State Bar Assn. v. Chiofalo*, 112 Ohio St.3d 113, 2006-Ohio-6512, 858 N.E.2d 378, ¶ 9 (a nonlawyer engages in the unauthorized practice of law by arguing statutory provisions and case law, construing a legal text to advance the case, and interpreting the weight, significance, and credibility of evidence presented).

{¶ 46} Based upon the foregoing, we sustain relator's objections and find that by drafting and submitting the November 9, 2008 memorandum to the parole board on behalf of Jones, respondents have engaged in the unauthorized practice of law.

**Sanction**

*Respondents Are Enjoined from Engaging in*

*the Unauthorized Practice of Law*

{¶ 47} Because we find that respondents engaged in the unauthorized practice of law with respect to each of the three counts alleged in relator's complaint, we adopt the board's recommendation and enter an injunction against each of the respondents forbidding any further violation.

*Civil Penalties Are Justified*

{¶ 48} We now turn to the board's recommendation that civil penalties be assessed against respondents. Gov.Bar R. VII(8)(B) authorizes the imposition of such penalties in an amount up to $10,000 per offense based upon consideration of four specific factors and one catchall, "[a]ny other relevant factors."

{¶ 49} 1. **Degree of cooperation**. The panel and board found that on numerous occasions, respondents failed or refused to cooperate in relator's investigation and the litigation of this case. Davie denied that he had received proper service of process in this case, failed to appear for his scheduled deposition twice, and refused to cooperate in the discovery phase of relator's investigation. Davie also filed an unfounded and frivolous action in the United States District Court for the Northern District of Ohio, seeking a declaratory judgment and injunctive relief to prevent this unauthorized-practice-of-law action from proceeding. The district court dismissed that action for failure to state a claim upon which relief can be granted, observing that it lacked jurisdiction to hear the case and that this court, the board, and relator were immune from liability. Despite the district court's certification that an appeal could not, in good faith, be taken from its decision, the panel and board found that Davie nevertheless appealed the decision "with a mind toward delaying this proceeding and challenging the Court's authority to regulate the unauthorized practice of law in Ohio."

**{¶ 50}** Davie has never admitted that the services he provided in the Brown, Singleton, or Jones matters constituted the unauthorized practice of law, and at the time of the hearing, he continued to challenge the court's authority to regulate his conduct. Respondents have not agreed to be enjoined from the unauthorized practice of law, and Davie refused to discuss any agreed resolution or stipulations.

**{¶ 51}** 2. **Number of violations**. The panel and board found that respondents committed the unauthorized practice of law in two of the three charged counts. We have found, however, that respondents have engaged in the unauthorized practice of law with respect to each of the three charged violations. And due to respondents' refusal to cooperate in relator's investigation, it is impossible to determine how many additional violations they may have committed.

**{¶ 52}** 3 and 4. **Flagrancy and harm to third parties**. Davie and ALS had their clients enter into contracts purporting to bind them to pay for legal services provided by respondents. Although Davie testified that his work was supervised by the late attorney Haygood, his contract states, "You understand (with the exception of a case evaluation service) it is your responsibility to provide legal counsel to ALS who will represent you" and purports to require payment for the services regardless of whether the client's attorney agrees to work with respondents. When Brown/Stephens and Singleton failed to pay in accordance with their contracts, Davie sued them in the Cleveland Municipal Court and obtained monetary judgments against them, which Davie then sought to collect. These judgments and corresponding collection efforts undoubtedly appear on the clients' credit reports and have therefore caused ongoing harm to these individuals. Moreover, the panel and board found:

Davie took advantage of the untimely death of Attorney Sebraien M. Haygood and fabricated testimony in an attempt to establish that Mr. Haygood was supervising him in the Brown and Singleton matters. The Panel was presented with no credible evidence that Attorney Haygood supervised Davie in either of those matters. Indeed, Respondents failed to produce a single document with Attorney Haygood's name on it or any documentation which might suggest that Attorney Haygood even had knowledge of the Brown or Singleton matters before his death.

{¶ 53} 5. **Other relevant factors**. The panel and the board found that Davie testified that he has attempted to find employment as a paralegal working under a lawyer's supervision but that his felony record has prevented him from obtaining such employment. As a result, Davie does not have regular employment and is nearly indigent. He has three children to support and lives with his extended family.

{¶ 54} The panel recommended a civil penalty of $2,000 per violation, for a total penalty of $4,000. Citing numerous aggravating factors, the board recommended that we impose the maximum civil penalty of $10,000 per violation, for a total penalty of $20,000. No objections have been filed to these recommended penalties.

{¶ 55} In light of the significant aggravating factors present in this case, including respondents' blatant disregard for our prohibitions against the unauthorized practice of law and their efforts to conceal the wrongful nature of their conduct by impugning the character of a deceased attorney who has not been shown to have any involvement in these matters and who cannot defend his good name, we now adopt the board's recommendation and impose civil penalties of

$10,000 in accordance with the board's recommendation, but impose them for each of the *three* violations we have found herein.

### Conclusion

**{¶ 56}** For the foregoing reasons, Michael D. Davie and Alpha Legal Services, Inc., are enjoined from further acts constituting the unauthorized practice of law. Davie may work as a paralegal or legal assistant in the state of Ohio, provided that he does so under the direct supervision of an attorney authorized to practice law in this state and identifies himself as a paralegal or legal assistant in all communications and correspondence.

**{¶ 57}** A civil penalty of $30,000 is imposed jointly and severally against Davie and Alpha Legal Services, Inc.

**{¶ 58}** Davie is further ordered, within 30 days of this order, to file the appropriate legal forms to release the judgments that he obtained in Cleveland Municipal Court cases *Davie v. Singleton*, case No. 08 CVI 25218, and *Davie v. Brown*, case No. 08 CVI 19312, and forthwith submit proof of the filings to relator. If Davie fails to timely release these judgments, he shall be fined $100 per day beginning on the 31st day following this order.

**{¶ 59}** Costs are taxed to respondents.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, LUNDBERG STRATTON, O'DONNELL, CUPP, and MCGEE BROWN, JJ., concur.

LANZINGER, J., concurs in part and dissents in part.

_____

**LANZINGER, J., concurring in part and dissenting in part.**

**{¶ 60}** I concur in the judgment of the court as to counts one and two; however, I would accept the findings of the panel as to count three and dismiss that count. I would impose a civil penalty of $5,000 for each remaining count, for a total of $10,000.

22

_____

John A. Hallbauer and Heather M. Zirke, Assistant Bar Counsel, for relator.

Donald R. Murphy, for respondents.

_____