OHIO STATE BAR ASSOCIATION, *v*. BURDZINSKI, BRINKMAN, CZARZASTY &
LANDWEHR, INC., ET AL.

[Cite as *Ohio State Bar Assn. v. Burdzinski, Brinkman, Czarzasty & Landwehr,
Inc.,* 112 Ohio St.3d 107, 2006-Ohio-6511.]

*Unauthorized practice of law — Labor-relations consultants — It is the
unauthorized practice of law to draft a contract on behalf of another that
is intended to create a legally binding relationship between an employer
and a union, even if the contract is copied from a form book or previously
prepared by a lawyer.*

(No. 2006-0839 – Submitted August 8, 2006 – Decided December 27, 2006.)

ON FINAL REPORT by the Board on the Unauthorized

Practice of Law, No. UPL 04-05.

_____

SYLLABUS OF THE COURT

1.  It is not the unauthorized practice of law for a nonlawyer to represent another
    in union-election matters or in the negotiation of a collective-bargaining
    agreement when the activities of the nonlawyer are confined to providing
    advice and services that do not require legal analysis, legal conclusions, or
    legal training.

2.  It is the unauthorized practice of law for a nonlawyer to draft or write a
    contract or other legal instrument on behalf of another that is intended to
    create a legally binding relationship between an employer and a union,
    even if the contract is copied from a form book or was previously prepared
    by a lawyer.

_____

MOYER, C.J.

{¶ 1} In this matter, on objections to the final report of the Board on the
Unauthorized Practice of Law, we are asked to determine whether consultations

and other services by nonlawyers in labor negotiations are the unauthorized practice of law.

I

{¶ 2} Respondent Burdzinski, Brinkman, Czarzasty & Landwehr, Inc., is a management-side labor consulting firm incorporated in 1988. Respondents Bernard Burdzinski II and Connie Brinkman-Burdzinski are shareholders and directors of the respondent corporation.

{¶ 3} As labor-relations consultants, respondents assist their clients in interactions with their clients' employees regarding union organizing. Respondents provide advice on how to prevent, conduct, and defeat a union election. Respondents gather information, develop a strategy, coach their clients on information-dissemination and the elimination of problems, and finally, make all arrangements for an election. Additionally, in the event the election to unionize is successful or a collective-bargaining agreement is already in place, respondents serve as both negotiators and drafters on behalf of their clients regarding labor agreements. Also, the respondents assist their clients in responding to charges of unfair labor practices before the National Labor Relations Board ("NLRB").

{¶ 4} Relator, the Ohio State Bar Association, filed a complaint with the Board on the Unauthorized Practice of Law averring that respondents' activities constitute the unauthorized practice of law. A hearing was conducted before a three-commissioner panel, after which the board adopted the panel's findings of fact and conclusions of law. The board concluded that two of the respondents had engaged in the unauthorized practice of law when they negotiated the settlement of election issues, served as lead negotiator in collective bargaining, and drafted collective-bargaining agreements on behalf of others. The board found that Connie Burdzinski was involved only in the drafting of collective-bargaining agreements. The board recommended that the Supreme Court enjoin the

respondents from the same or similar conduct and that respondents reimburse the costs and expenses incurred by the board and relator.

## II

**{¶ 5}** The threshold issue is whether the federal government has preempted the field of labor negotiations. Respondents assert that we are preempted from regulating this area by the National Labor Relations Act.

**{¶ 6}** But even in an area as federally regulated as labor relations, "Congress * * * has never exercised authority to occupy the entire field in the area of labor legislation. Thus the question whether a certain state action is pre-empted by federal law is one of congressional intent. ' "The purpose of Congress is the ultimate touchstone." ' " *Allis-Chalmers Corp. v. Lueck* (1985), 471 U.S. 202, 208, 105 S.Ct. 1904, 85 L.Ed.2d 206, quoting *Malone v. White Motor Corp.* (1978), 435 U.S. 497, 504, 98 S.Ct. 1185, 55 L.Ed.2d 443, quoting *Retail Clerks v. Schermerhorn* (1963) 375 U.S. 96, 103, 84 S.Ct. 219, 11 L.Ed.2d 179.

**{¶ 7}** The United States Supreme Court has consistently held that it was never the intent of Congress to preempt the field of labor relations: "We cannot declare pre-empted all local regulation that touches or concerns in any way the complex interrelationships between employees, employers, and unions; obviously, much of this is left to the States." *Amalgamated Assn. of Street, Elec. Ry. & Motor Coach Emps. of Am. v. Lockridge* (1971), 403 U.S. 274, 289, 91 S.Ct. 1909, 29 L.Ed. 2d 473; see, also, *San Diego Bldg. Trades Council, Millmen's Union v. Garmon* (1959), 359 U.S. 236, 243-244, 79 S.Ct. 773, 3 L.Ed.2d 775 ("However, due regard for the presuppositions of our embracing federal system, including the principle of diffusion of power not as a matter of doctrinaire localism but as a promoter of democracy, has required us not to find withdrawal from the States of power to regulate where the activity regulated was a merely peripheral concern of the Labor Management Relations Act").

**{¶ 8}** The United States Supreme Court has identified two categories of cases that hold state authority to be preempted by federal labor law: "(1) those that reflect the concern that 'one forum would enjoin, as illegal, conduct which the other forum would find legal' and (2) those that reflect the concern 'that the [application of state law by] state courts would restrict the exercise of rights guaranteed by the Federal Acts.' " *Lodge 76, Internatl. Assn. of Machinists & Aerospace Workers, AFL-CIO v. Wisconsin Emp. Relations Comm.* (1976), 427 U.S. 132, 138, 96 S.Ct. 2548, 49 L.Ed.2d 396, quoting *Internatl. Union, Unified Auto., Aircraft & Agricultural Implement Workers of Am. v. Russell* (1958), 356 U.S. 634, 644, 78 S.Ct. 932, 2 L.Ed.2d 1030. Neither of those concerns is applicable here.

**{¶ 9}** Our determination as to whether respondents may represent employers in the circumstances described herein would not enjoin conduct in one forum that is legal in another, nor would we limit rights guaranteed by Congress. Our disposition of this case will not affect the ability of employers or unions to represent themselves in these matters; rather, this case is limited to third-party, nonemployee, or nonunion persons. The federal labor laws address the relationship between employees and employers, not the authority of nonlawyers to act as consultants during union-authorization elections. *Brown v. Hotel & Restaurant Emps. & Bartenders Internatl. Union Local 54* (1984) 468 U.S. 491, 505, 104 S.Ct. 3179, 82 L.Ed.2d 373.

**{¶ 10}** The United States Supreme Court has been especially deferential to concerns of the states: "Federal labor policy as reflected in the National Labor Relations Act, as amended, has been construed not to preclude the States from regulating aspects of labor relations that involve 'conduct touch[ing] interests so deeply rooted in local feeling and responsibility that * * * we could not infer that Congress had deprived the States of the power to act.' " *Lodge 76*, 427 U.S. at

4

136, 96 S.Ct. 2548, 49 L.Ed.2d 396, quoting *San Diego Bldg. Trades Council, Millmen's Union*, 359 U.S. at 244, 79 S.Ct. 773, 3 L.Ed.2d 775.

{¶ 11} There are few interests more deeply rooted in local responsibility than the governance of the bar. "We recognize that the States have a compelling interest in the practice of professions within their boundaries, and that as part of their power to protect the public health, safety, and other valid interests they have broad power to establish standards for licensing practitioners and regulating the practice of professions. * * * The interest of the States in regulating lawyers is especially great since lawyers are essential to the primary governmental function of administering justice, and have historically been 'officers of the courts.' " *Goldfarb v. Virginia State Bar* (1975), 421 U.S. 773, 792, 95 S.Ct. 2004, 44 L.Ed.2d 572. See, also, *Leis v. Flynt* (1979), 439 U.S. 438, 442, 99 S.Ct. 698, 58 L.Ed.2d 717 ("the licensing and regulation of lawyers has been left exclusively to the States * * * within their respective jurisdictions").

{¶ 12} The overwhelming body of case law shows that Congress has not intended to preempt the field of labor relations and that there is ample room for state regulation of matters of local concern and responsibility. This case does not affect the rights of employers or employees, but rather concerns the ability of the state to regulate the practice of law, a historically state function. There is no risk that our determination today will conflict with the intent of Congress; we therefore hold that we are not preempted by federal labor law and may properly regulate the actions of nonlawyers in labor-related matters.

III

A

{¶ 13} "This court has exclusive power to regulate, control, and define the practice of law in Ohio * * *. The power to regulate includes the authority to grant as well as the authority to deny * * *." *Cleveland Bar Assn. v. CompManagement Inc.*, 104 Ohio St.3d 168, 2004-Ohio-6506, 818 N.E. 2d 1181,

¶ 39. In the seminal case regarding the unauthorized practice of law, we held, "The practice of law is, 'as generally understood, the doing or performing services in a court of justice, in any matter depending therein, throughout its various stages, and in conformity with the adopted rules of procedure. But in a larger sense it includes legal advice and counsel, and the preparation of legal instruments and contracts by which legal rights are secured, although such matter may or may not be depending in a court.' " *Land Title Abstract & Trust Co. v. Dworken* (1934), 129 Ohio St. 23, 28, 1 O.O. 313, 193 N.E. 650, quoting 49 *Corpus Juris* 1313.

{¶ 14} This case presents three distinct activities in which respondents have engaged: advising an employer regarding labor-election matters, negotiating on behalf of an employer on labor issues, and preparing labor agreements on behalf of an employer.

B

{¶ 15} The record suggests and respondents stated at oral argument that the NLRB prepares brochures, pamphlets, and other documents to assist employers and employees in their understanding of their respective responsibilities and rights regarding a union election. Respondents argue that there is no interpretation regarding these regulations; rather, they are exhaustive lists of allowed and prohibited actions.

{¶ 16} The panel found that respondents gather information that indicates the reasons employees may want a union, and they develop strategies to respond to that information. Gathering information, even on a matter that may come before a tribunal, is not the practice of law. The strategies developed appear to be business-oriented, such as how to communicate with employees. Strategic planning of this nature is not the practice of law.

{¶ 17} The panel also found that respondents coached management on what topics to discuss and how to discuss them with employees, how to eliminate

problems identified by employees, and how to arrange and conduct a union election.

{¶ 18} Normally, advising a client on how to comply with a regulatory scheme would be the practice of law, but in this case, the NLRB has already performed that function. Here, respondents use NLRB-prepared writings, rather than their own analysis or training, to advise their clients. Despite the use of words like "challenge," "objection," and "settlement" in the record regarding election matters, these terms are not used as legal terms in this context. Rather, respondents follow a strict set of guidelines published by the NLRB, without analysis or interpretation. Presenting prepackaged legal advice of this nature is not the practice of law.

{¶ 19} Accordingly, we hold that respondents' actions on behalf of their customers related to a union election are not the practice of law.

C

{¶ 20} Respondents also serve as negotiators on behalf of their clients. Respondents may serve as a member of a negotiating committee or as lead negotiator. The panel found that the NLRB publishes a list of mandatory, permissible, and prohibited subjects for bargaining. While we have previously found negotiating on behalf of another to be the practice of law, our precedent is distinguishable from the facts of this case. *Land Title Abstract*, 129 Ohio St. at 29, 1 O.O. 313, 193 N.E. 650. See, also, *Cleveland Bar Assn. v. Henley* (2002), 95 Ohio St.3d 91, 766 N.E.2d 130. Respondents here are not negotiating the settlement of a legal dispute, nor are they negotiating a business or real-estate contract in which all elements of the contract are negotiable. Rather, there is a clearly defined scope of allowable subjects for negotiation. Because of the close federal regulation and the limited subjects for negotiation, we conclude that respondents' conducting of negotiations on behalf of their clients with employees

or employees' representatives during collective bargaining is not the practice of the law.

D

**{¶ 21}** Lastly, respondents draft employment contracts and collective-bargaining agreements based upon the previous negotiations. Sometimes respondents simply copy and fill in the blanks of previously used contracts, sometimes they write contracts themselves, and sometimes they use a combination of efforts.

**{¶ 22}** We have consistently held that drafting contracts or legal instruments on behalf of another is the practice of law. *Land Title Abstract,* 129 Ohio St. at 28-29, 1 O.O 313, 193 N.E. 650, and at syllabus. ("The greater, more responsible, and delicate part of a lawyer's work is in other directions. Drafting instruments creating trusts, formulating contracts, drawing wills and negotiations, all require legal knowledge and power of adaptation of the highest order").

**{¶ 23}** The fact that respondents may copy the contracts or use forms from a form book does not change the nature of the act. In *Geauga Cty. Bar Assn. v. Canfield* (2001), 92 Ohio St.3d 15, 748 N.E.2d 23, the respondent argued that simply copying a form contract was not the practice of law. We rejected that argument: "Although he copied the documents from a form book, the fact is that respondent completes those forms not for himself, but for the benefit of another." Id. The drafting or writing of a contract or other legal instrument on behalf of another is the practice of law, even if the contract is copied from a form book or contract previously prepared by a lawyer.

IV

**{¶ 24}** It is not the unauthorized practice of law for a nonlawyer to represent another in union-election matters or in the negotiation of a collective-bargaining agreement when the activities of the nonlawyer are confined to providing advice and services that do not require legal analysis, legal conclusions,

or legal training. It is the unauthorized practice of law for a nonlawyer to draft or write a contract or other legal instrument on behalf of another that is intended to create a legally binding relationship between an employer and a union, even if the contract is copied from a form book or was previously prepared by a lawyer.

{¶ 25} Respondents are therefore enjoined from the further drafting or writing of contracts. Costs are taxed to respondent.

Judgment accordingly.

RESNICK, PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

_____

Chernesky, Heyman & Kress, P.L.L., Thomas P. Whelley II, and Rachael L. Rodman, for respondents.

Fitch, Kendall, Cecil, Robinson & Barry Co., L.P.A., and Ian Robinson; and Eugene Whetzel, for relator.

Frost Brown Todd L.L.C., George E. Yund, and Christine L. Robek, for amicus curiae, Ohio Management Lawyers Association.

_____