[Cite as *Ohio State Bar Assn. v. Miller,* 138 Ohio St.3d 203, 2014-Ohio-515.]

OHIO STATE BAR ASSOCIATION *v.* MILLER.

[Cite as *Ohio State Bar Assn. v. Miller,* 138 Ohio St.3d 203, 2014-Ohio-515.]

*Unauthorized practice of law—Preparation of deeds, trusts agreements, affidavits, powers of attorney, and promissory notes for another and filing pleadings and motions for another in court constitute unauthorized practice of law—Respondent enjoined and fined.*

(No. 2013-0647—Submitted June 5, 2013—Decided February 18, 2014.)

ON FINAL REPORT by the Board on the Unauthorized Practice of Law of the Supreme Court, No. UPL 10-08.

_____

**Per Curiam.**

{¶ 1} On November 15, 2010, relator, Ohio State Bar Association, filed a six-count complaint with the Board on the Unauthorized Practice of Law against respondent, Paul-Eugene Miller. The complaint alleged that Miller, who is not admitted to practice law in Ohio, on multiple occasions prepared trust agreements, deeds, affidavits, powers of attorney, promissory notes, and other legal documents and filed motions and pleadings on behalf of his company, Diversified Benefits Group, Ltd., in common pleas court.[1] Miller filed an answer that did not affirmatively deny relator's allegations but merely "acknowledge[d]" the substantive allegations and prayer for relief. As shown below, Miller filed answers in court on behalf of himself and Diversified in court actions involving his business of purchasing homes. In those answers, Miller specifically denied allegations in the complaints, so he knew how to deny allegations but elected not

_____

1. Diversified Benefits Group was not made a party to the proceeding, because the company was no longer in business by the time the complaint in this matter was filed.

to do so here. In light of Miller's failure to deny the allegations in relator's complaint, they are deemed admitted. Civ.R. 8(D).

{¶ 2} Relator filed a motion for summary judgment, to which Miller responded with a memorandum in opposition and purporting to be in support of a cross-motion for summary judgment.[2] In that filing, Miller provided no substantive legal argument or evidence contrary to that presented by relator. The panel granted relator's motion and later issued its report finding that Miller had engaged in the unauthorized practice of law in each of the six counts of the complaint and that he had engaged in court representation of his own organization, Diversified, for several years. The panel recommended that a civil penalty of $1,000 for each of the seven offenses would be an appropriate balancing of the aggravating and mitigating factors. The board voted to approve the panel's report and adopt its findings of fact, conclusions of law, and recommendations.

{¶ 3} We adopt the board's findings of fact, conclusions of law, and recommended sanction. For the reasons that follow, we find that Miller engaged in the unauthorized practice of law, and we impose a $1,000 penalty for each of the seven offenses, totaling $7,000, for that conduct.

**Improper Conduct**

{¶ 4} Miller was a "managing member" of Diversified and served as its agent throughout the activities enumerated here. He is not, and has never been, an attorney admitted to the practice of law in Ohio pursuant to Gov.Bar R. I, registered pursuant to Gov.Bar R. VI, or certified pursuant to Gov.Bar R. II, IX, or XI.

{¶ 5} In 2006 and 2007, Miller provided legal representation to individuals, some of whom had responded to an advertisement stating that he was

---

2. Although Miller refers to his cross-motion in his memorandum, the record does not reflect that he ever filed such a motion.

in the business of purchasing homes. And from 2004 to 2008, Miller filed with the county recorder's office multiple documents that he had created for and on behalf of the homeowners he was assisting. Last, from at least February 2006 to December 2009, Miller filed motions and pleadings in court on behalf of Diversified, each occasion of which constituted the practice of law.

**{¶ 6}** Each of the six counts in the complaint involved a homeowner or homeowners who owned real property in Ohio that was subject to a mortgage.[3] The facts are similar in each count, with the homeowner entering into an agreement with Miller, who acted as an agent for Diversified for the sale of the real property, and Miller drafting variously a general warranty deed, a trust, and/or a "land trust beneficial assignment" for each.

**{¶ 7}** Craig and Heidi Stevens owned property in Howard, Ohio, in 2007. That year, they decided to relocate, and they responded to an advertisement by Miller who, upon meeting with them, explained that he would prepare all of the paperwork for them to sell their property to him. Miller told the Stevenses that once the paperwork was signed, he would be responsible for all expenses related to the property and the Stevenses would not have to worry about the property thereafter. Miller produced and had the Stevenses sign a purchase contract, a limited power of attorney, a trust agreement, a deed conveying their property to a trustee, and a "Land Trust Beneficial Interest Assignment," assigning their interests to Diversified. Miller said that the trustee of the trust "would act as a neutral party to make sure that everyone's interests were protected." The Stevenses also paid Miller $3,000 as part of the transaction.

**{¶ 8}** At some later point, Mr. Stevens discovered that neither Diversified nor Miller was making regular payments on the mortgage. He tried to

---

3. Uncontested documents in the record reflect that Diversified Benefits Group prepared and filed deeds and affidavits in the Knox County Recorder's Office on behalf of at least four additional clients who were not mentioned in the complaint.

contact Miller but was unable to reach him, and the Stevenses lost their home to foreclosure in April 2009, suffering damage to their credit rating as well.

{¶ 9}   In 2006, Randall Wells and his wife Debra owned a residence in Mt. Vernon, Ohio.   In October 2006, the Wellses decided to relocate and responded to an advertisement by Miller stating that his company, Diversified, was in the business of purchasing homes.  Miller later explained that the property would be held in trust and leased to prospective purchasers who were unable to qualify for mortgages and that the rental payments made by the lessees would be collected by Diversified and used to pay the mortgage.  Miller further explained that after making steady payments, the buyers/lessees would qualify for a mortgage loan, which would then enable them to purchase the property.  Miller informed the Wellses that he would prepare all the necessary documents, which he later provided to them.

{¶ 10} The documents that Miller provided to the Wellses and had them sign were a real estate purchase contract, a promissory note, a trust agreement, and a trust-beneficiary assignment.  Miller told the Wellses that the trustee would "make sure that everyone was protected under the agreements."  As part of the transaction, the Wellses paid Miller $4,000.

{¶ 11} A few months after signing the documents, Mr. Wells discovered that neither Miller nor Diversified had made regular payments on the mortgage. A foreclosure complaint regarding the property was filed in August 2008, and because Mr. Wells was unable to resolve payment issues with the lender, the home was sold at a foreclosure sale.  As a direct result of Miller's conduct, the Wellses lost their home, were forced to file for bankruptcy, and suffered serious damage to their credit rating.  Mr. Wells suffered the further embarrassment of having his wages garnished by his creditor.

{¶ 12} Miller, in a similar approach, prepared and filed deeds and trust-related documents for additional clients during this same period, resulting in four

more counts charging misconduct.  These six matters and Miller's representation of Diversified in court constituted the seven violations found by the panel and board.

**{¶ 13}** The Ohio Constitution, Article IV, Section 2(B)(1)(g) gives this court original jurisdiction over all matters relating to the practice of law, including the unauthorized practice of law. *Ohio State Bar Assn. v. Martin*, 118 Ohio St.3d 119, 2008-Ohio-1809, 886 N.E.2d 827, ¶ 31.  Pursuant to this authority, we have defined the unauthorized practice of law as "[t]he rendering of legal services for another by any person not admitted to practice in Ohio." Gov.Bar R. VII(2)(A)(1); *Cleveland Bar Assn. v. Pearlman,* 106 Ohio St.3d 136, 2005-Ohio-4107, 832 N.E.2d 1193, ¶ 7.

**{¶ 14}** The rendering of legal services includes more than just the handling of cases in court. We have held that it also includes "giving legal advice and counsel and the preparation of legal instruments and contracts by which legal rights are preserved." *Ohio State Bar Assn. v. Allen*, 107 Ohio St.3d 180, 2005-Ohio-6185, 837 N.E.2d 762, ¶ 7.  The rendering of legal services also encompasses "preparing and filing legal pleadings and other papers, appearing in court cases, and managing actions and proceedings on behalf of clients before judges, whether before courts or administrative agencies." *Cleveland Bar Assn. v. Coats*, 98 Ohio St.3d 413, 2003-Ohio-1496, 786 N.E.2d 449, ¶ 3, citing *Richland Cty. Bar Assn. v. Clapp*, 84 Ohio St.3d 276, 278, 703 N.E.2d 771 (1998); *Cincinnati Bar Assn. v. Estep*, 74 Ohio St.3d 172, 173, 657 N.E.2d 499 (1995). *Accord Cleveland Bar Assn. v. Picklo*, 96 Ohio St.3d 195, 2002-Ohio-3995, 772 N.E.2d 1187, at ¶ 5.  In other words, it includes "all advice to clients and all action taken for them in matters connected with the law*." Land Title Abstract & Trust Co. v. Dworken*, 129 Ohio St. 23, 193 N.E. 650 (1934), paragraph one of the syllabus.  *See also Dayton Bar Assn. v. Stewart*, 116 Ohio St.3d 289, 2007-Ohio-6461, 878 N.E.2d 628 (a nonattorney's advising another person in corporate-

structuring strategies and preparing incorporation documents constitute the unauthorized practice of law).

{¶ 15} Here, Miller, in a letter to disciplinary counsel attached to his answer, attempts to excuse his conduct by claiming that the legal documents prepared for the homeowners were "templates" drafted by an attorney, in which he merely inserted the parties' names. However, we have consistently held that drafting contracts or legal instruments on behalf of another constitutes the practice of law. *Ohio State Bar Assn. v. Burdzinski, Brinkman, Czarzasty & Landwehr, Inc.*, 112 Ohio St.3d 107, 2006-Ohio-6511, 858 N.E.2d 372, ¶ 22, citing *Land Title Abstract* at 28-29. "The fact that respondents may copy the contracts or use forms from a form book does not change the nature of the act. * * * The drafting or writing of a contract or other legal instrument on behalf of another is the practice of law, even if the contract is copied from a form book or a contract previously prepared by a lawyer." *Id.* at ¶ 23. Miller's defense on this point is unavailing.

{¶ 16} Moreover, Miller on numerous occasions filed procedural motions, dispositive motions, and other pleadings in state-court lawsuits on behalf of Diversified and four trusts for which he served as trustee. Miller continued to file papers in other cases, even after a court denied a motion filed by him on the ground that he was not a licensed attorney and was not permitted to represent a corporation before the court of common pleas. He was also disqualified in at least one other case from representing a trust, and the responsive pleading he had filed as trustee for the trust was stricken. And the record is replete with filings of deeds and affidavits in the county recorder's office that were prepared and filed by Miller on behalf of multiple other clients. This collective misconduct falls squarely in our precedent, noted above, concerning the rendering of legal services.

{¶ 17} Miller also advised the Wellses and the Stevenses that the purpose of holding their properties in trust was to "make sure that everyone was protected

6

under the agreements." In advising them as to what documents were needed and the legal effects of the documents, Miller provided legal advice to these individuals.

{¶ 18} Our role in cases involving the unauthorized practice of law is to conduct an independent review of the alleged misconduct, the evidence adduced at the panel hearing, the findings of fact and conclusions of law, and the recommendations of the panel and board. From those, we determine whether the conduct constituted the unauthorized practice of law. *Cleveland Metro. Bar Assn. v. Davie*, 133 Ohio St.3d 202, 2012-Ohio-4328, 977 N.E.2d 606, ¶ 33.

{¶ 19} The panel and board found by a preponderance of the evidence presented that Miller had engaged in the unauthorized practice of law in each of the six counts of the complaint by performing the following services for another: drafting contracts, deeds, trust agreements, affidavits, powers of attorney, and promissory notes, and preparing and filing pleadings in court on behalf of Diversified. The panel and board also found that when Miller advised both the Stevenses and the Wellses regarding what documents were needed and the legal effect of those documents, he provided legal services that constituted the unauthorized practice of law. We adopt the board's findings.

## Sanction

{¶ 20} We turn now to the board's recommendation that civil penalties be imposed against Miller. Gov.Bar R. VII(8)(B) authorizes the imposition of such penalties in an amount up to $10,000 per offense based upon consideration of four specific factors and one catchall: "[a]ny other relevant factors."

{¶ 21} 1. **Degree of cooperation in the investigation (Gov.Bar R. VII(8)(B)(1)).** The panel and board found that Miller fully participated in the process even though he had moved to another state and suffered the loss of his wife after a lengthy battle with cancer during these proceedings. Miller also assured relator that he would not continue the conduct at issue.

**{¶ 22}** 2. **Number of violations (Gov.Bar R. VII(8)(B)(2)).** The panel and board found that Miller committed the unauthorized practice of law in his work with multiple clients. In addition, Miller also engaged in the unauthorized practice of law when he filed pleadings in court on behalf of Diversified.

**{¶ 23}** 3. **Flagrancy of the violations (Gov.Bar R. VII(8)(B)(3)).** The panel and board found that Miller continued to file papers in court after being notified by a court that his conduct was improper.

**{¶ 24}** 4. **Harm to third parties arising from the offense (Gov.Bar R. VII(8)(B)(4)).** The panel and board found that Miller advertised that his company would purchase homes and relieve the homeowners of their financial obligations, but because he did not pay the mortgages in the Stevens and Wells transactions, they lost their homes in foreclosure sales. The Wellses also filed for bankruptcy. The Stevenses and the Wellses paid Miller $3,000 and $4,000, respectively, for his services.

**{¶ 25}** 5. **Any other relevant factors (Gov.Bar R. VII(8)(B)(5)).** Miller moved to Texas during the pendency of these proceedings. His organization, Diversified, is defunct, and he assured relator that he no longer would engage in this conduct.

**{¶ 26}** The board recommends that we issue an order finding that Miller engaged in the unauthorized practice of law, that we issue an order prohibiting him from engaging in the unauthorized practice of law in the future, and that we impose a civil penalty against him in the amount of $7,000.

**{¶ 27}** Having found that Miller engaged in the unauthorized practice of law, we accept the board's recommendations. We also accept the recommendation that we impose civil penalties and in doing so, we weigh the factors listed in Gov.Bar R. VII(8)(B) and UPL Reg. 400(F).

**{¶ 28}** The board found in mitigation that Miller had ceased engaging in the conduct under review, had admitted that the conduct constituted the

8

unauthorized practice of law, and had not had other penalties imposed for the conduct at issue. But the record does not reflect that Miller affirmatively admitted that his conduct constituted the unauthorized practice of law. And the board did not find that Miller "has engaged in a timely good faith effort to make restitution or to rectify the consequences of the unauthorized practice of law," pursuant to UPL Reg. 400(F)(4)(f).

{¶ 29} Aggravating factors found by the board include that Miller benefited from his misconduct by collecting fees from two clients and that he prepared and filed legal documents in court on behalf of clients and his own organization. In doing so, Miller ignored court orders that precluded him from filing papers on behalf of others.

{¶ 30} In light of the aggravating factors present in this case, we adopt the board's recommendation and impose civil penalties of $7,000 in accordance with that recommendation.

## Conclusion

{¶ 31} For the foregoing reasons, Paul-Eugene Miller is enjoined from further acts constituting the unauthorized practice of law. Additionally, we impose a civil penalty of $7,000 against Miller.

{¶ 32} Costs are taxed to Miller.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

_____

Eugene P. Whetzel, Bar Counsel; and Thrasher, Dinsmore & Dolan and Heidi M. Cisan, for relator.

Paul-Eugene Miller, pro se.

_____