[Cite as *Gibbons v. Ohio State Dental Bd.*, 2022-Ohio-2463.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

| | |
|---|---|
| ERIN A. GIBBONS, | CASE NO. 2021-L-128 |
| Appellant, | |
| - v - | Administrative Appeal from the Court of Common Pleas |
| OHIO STATE DENTAL BOARD, | |
| Appellee. | Trial Court No. 2021 CV 000285 |

**O P I N I O N**

Decided: July 18, 2022
Judgment: Affirmed

*Adam J. Thurman*, Rosenthal Thurman Lane LLC, 1001 Lakeside Avenue, Suite 1720, Cleveland, OH 44114 (For Appellant).

*David Yost*, Ohio Attorney General, State Office Tower, 30 East Broad Street, 16th Floor, Columbus, OH 43215, and *Katherine J. Bockbrader*, Assistant Attorney General, Health and Human Services Section, 30 East Broad Street, 26th Floor, Columbus, OH 43215 (For Appellee).

MATT LYNCH, J.

{¶1} Appellant, Erin A. Gibbons, appeals the Judgment of the Lake County Court of Common Pleas, affirming an adjudication of appellee, the Ohio State Dental Board, suspending her license to practice dental hygiene upon conditions. For the following reasons, we affirm the decision of the court below.

{¶2} On March 10, 2021, Gibbons filed an administrative appeal, pursuant to Revised Code 119.12, from the February 23, 2021 Adjudication Order of the Ohio State Dental Board, to the Lake County Court of Common Pleas.

{¶3}    In May of 2017, Gibbons graduated from Lakeland Community College with an associate degree in Dental Hygiene.

{¶4}    On or about November 11, 2017, Gibbons applied to the Ohio State Dental Board for a license to practice dental hygiene.  On the New License Application, she was asked: "Have you been convicted of or pled guilty to any felony or misdemeanor? (Exclude all traffic violations, except those involving driving while under the influence of alcohol or drugs.)? If YES, it is REQUIRED that you provide (1) court documentation showing what the charges were, and (2) a detailed personal statement giving an explanation of those charges. Answering yes does not automatically bar you from licensure.  Applications will be reviewed on a case by case basis."  Gibbons responded, "No."  Contrary to her response, Gibbons was convicted of Possession of Drugs and Operating a Vehicle Under the Influence (OVI) in Mentor Municipal Court on December 22, 2014, and OVI in Painesville Municipal Court on October 13, 2015.  The existence of these convictions was discovered during the standard FBI background check of Gibbons.

{¶5}    The matter was assigned to Barbara Yehnert, Enforcement Officer with the Ohio State Dental Board, on December 27, 2017.

{¶6}    The parties agreed to enter into a Consent Agreement.  In the Agreement, Gibbons admitted her convictions and that "she received inpatient treatment for alcohol at Glenbeigh for approximately six weeks from on or around March and April 2015." According to the terms of the Agreement, the Board would issue Gibbons a license to practice dental hygiene and suspend it for a period of fourteen days.  Thereupon, her license to practice would be placed on probation for a period of five years.  The Board agreed to suspend disciplinary proceedings against Gibbons "pending successful

2

completion of [the] terms, limitations, and conditions" of the Agreement. Gibbons and her counsel signed the Agreement on May 3, 2018. Gibbons' compliance with the Agreement was overseen by the Ohio Physicians Health Program. In accordance with the terms of the Agreement, Gibbons' license was issued, suspended, and reinstated on June 1, 2018.

{¶7} The Physicians Health Program reported two violations of the Agreement to the Board within a couple of months of the reinstatement of Gibbons' license. As a result, Gibbons and the Board entered into an Addendum to the Consent Agreement. Gibbons signed the Addendum on September 6, 2018, in which she admitted the following violations of the Agreement:

{¶8} Under the terms of the Agreement, Gibbons was to "abstain completely from the use of alcohol." On June 11, 2018, Gibbons' urine tested positive for alcohol metabolites. A subsequent Phosphatidylethanol (PEth) blood test also returned a positive result for alcohol consumption. Gibbons "denied alcohol consumption, explaining that the positive test may be due to her regular use of mouthwash containing alcohol and her roommate who may be sabotaging her beverages with alcohol to try to get her in trouble."

{¶9} Under the terms of the Agreement, Gibbons was to "disclose a copy of [the] AGREEMENT to every employer during the probation period." On or about July 13, 2018, Gibbons' employer advised the Physicians Health Program that "he was informed of the Agreement but not given the 'exact details.'"

{¶10} As part of the Addendum, Gibbons agreed to "obtain an outpatient substance abuse evaluation" and "fully comply with any recommendations from the outpatient substance use evaluation"; "abstain completely from the use of alcohol"; and "fully comply with the terms of her Agreement." In return, the Board agreed "to suspend

3

the disciplinary proceedings against Ms. Gibbons pending successful completion of these terms, limitations, and conditions."

{¶11} On May 8, 2019, the Board issued Gibbons a Notice of Opportunity for Hearing, advising her that it intended to take disciplinary action with respect to her license to practice dental hygiene for violations of the terms and conditions of her probationary status. Gibbons requested a hearing. Gibbons also filed a Motion to Vacate Consent Agreement and Addendum to Consent Agreement on the grounds that the Agreement "was obtained under duress and was unreasonably severe under the circumstances that existed at the time of the agreement." Between June and September 2020, four hearings were held on the Board's proposed action. Additional written arguments were submitted through November 2020.

{¶12} On December 14, 2020, the Hearing Examiner issued his Report and Recommendation. The Examiner made the following findings:

> The State has established by a preponderance of the evidence that Ms. Gibbons' license to practice dental hygiene in Ohio was placed on probationary status pursuant to R.C. 4515.30(C)(2) by the terms of the May 11, 2018 Consent Agreement and the September 12, 2018 Addendum to the Consent Agreement.
>
> The State has demonstrated by a preponderance of the evidence that acts, conduct and/or omissions of Ms. Gibbons, as alleged in the Notice of Opportunity for Hearing, and as set forth in the Findings of Fact and Summary of the Evidence * * *, constitute violations of the terms of probation set forth in the May 11, 2018 Consent Agreement and the September 12, 2018 Addendum to the Consent Agreement, specifically:
>
> a) On November 27, 2018, Ms. Gibbons left employment with Dr. Alan Schlesinger, DDS as a dental hygienist but did not notify the Board in writing within three days of her change in employment status, in violation of paragraph 8 of the May 11, 2018 Consent Agreement.

4

b) Ms. Gibbons received a positive result on her February 15, 2019 randomly selected urine drug/alcohol screen that included Ethyl glucuronide (EtG) and Ethyl sulfate (EtS), metabolites of alcohol, in violation of Paragraph 3(c) of the May 11, 2018 Consent Agreement, Paragraph 3 of the September 12, 2018 Addendum and Paragraph 4 of the Addendum.

c) Ms. Gibbons failed to take a Phosphatidylethanol (PEth) blood test requested by OPHP on February 26, 2019 to confirm the positive results from the February 15, 2019 screen, a violation of Paragraphs 3(d), 5 and 6 of the May 11, 2018 Consent Agreement and Paragraphs 3 and 4 of the Addendum.

The Examiner recommended that Gibbons' license to practice dental hygiene be revoked.

{¶13} With respect to the Motion to Vacate, it was stated: "The Hearing Examiner is without jurisdiction to consider the [Gibbons'] Motion to Vacate the prior Consent Agreement and Addendum as this lies solely within the province of the Board. Any request to modify or terminate the terms of those documents should be made to that body and/or its enforcement staff."

{¶14} On February 23, 2021, the Dental Board issued its Adjudication Order. The Board adopted the Examiner's findings of fact and conclusions of law but modified the recommendation. Instead of being revoked, Gibbons' license would be suspended indefinitely, subject to reinstatement after a period of six months and upon proof that the following requirements were met: "(1) [Gibbons] shall successfully complete a minimum 8-week intensive outpatient treatment program for chemical/alcohol dependency at a Board approved treatment facility; (2) [Gibbons] shall immediately enter into an agreement with the Ohio Physician's Health Program (OPHP); (3) [Gibbons] shall abstain completely from the personal use or possession of drugs, except those prescribed, dispensed, or administered to her by another so authorized by law who has full knowledge of the terms of the ORDER; (4) [Gibbons] shall abstain completely from the use of alcohol;

5

Case No. 2021-L-128

(5) [Gibbons] shall submit to blood or urine specimens for analysis upon [B]oard request and without prior notice * * *; (6) Results of all drug/alcohol screens must be negative * * *; (7) [Gibbons] shall be responsible for the expenses associated with the [preceding] requirements." Upon reinstatement, Gibbons would be on probation for a period of at least six months subject to conditions (2) through (7).

{¶15} On March 10, 2021, Gibbons filed her Notice of Appeal to the Lake County Court of Common Pleas.

{¶16} On November 15, 2021, the trial court issued its Judgment Entry affirming the decision of the State Dental Board. In so doing, the court observed that the facts regarding the three violations identified by the Hearing Examiner (a positive test for alcohol use in February 2019, the failure to obtain a confirmation blood test, and the failure to notify the Board of a change in her employment status) were uncontroverted. The court continued:

> [Gibbons] does not dispute [these] facts but instead seeks to have the 2018 Consent Agreement and Addendum vacated. The Court takes note of some of [her] arguments contained in the record: 1) she checked "no" when she should have checked "yes" on her initial application for dental hygienist licensure when asked about criminal convictions because she wanted to explain; 2) she did not intend to defraud the Ohio State Dental Board because she emailed someone at the Ohio State Dental Board about her two OVI convictions; 3) she entered the 2018 Consent Agreement under duress because she wanted to have the Agreement ratified in May so she could begin work and the investigator pretended friendliness when explaining the agreement and did not reiterate its terms enough; 4) her legal counsel was her uncle and he did not adequately serve her at the time she signed the Consent Agreement; 5) she failed an alcohol test in June 2018 because her then-roommate Robert spiked her drinks as he was obsessed with her and/or she used Listerine mouthwash; 6) she entered the Addendum Agreement without counsel; 7) she violated the Addendum Agreement by failing an alcohol urine screen; 8) she failed to submit to a confirmation blood test; 9) she failed to notify the Ohio State Dental Board of a change in employment even

6

though she knew that she was required to under the Consent Agreement; 10) she wishes to re-negotiate the terms of the Consent Agreement and Addendum; 11) she has been diagnosed with a mild alcohol use disorder by at least two doctors rather than some other diagnosis and thus, she should not be required to abstain from drinking as required pursuant to the Consent Agreement and Addendum.

* * *

This court recognizes that [Gibbons] continues to make the same arguments [as she did to the Hearing Officer] that the Consent Agreement and Addendum should be vacated, but this Court also lacks jurisdiction to vacate the Consent Agreement and Addendum. Clearly, the Ohio State Dental Board has the authority to oversee licensing for dental hygienists, which includes Consent Agreements and Addendums thereto as a condition of licensing. [Gibbons] signed said Consent Agreement and Addendum, and this Court has no Authority to require the State Dental Board to renegotiate with [her] now. This Court cannot substitute its judgment for that of the agency in the face of disputed evidence because the Ohio State Dental Board's decision is supported by reliable, probative, and substantial evidence and is in accordance with the law.

(Footnotes omitted.)

{¶17} On December 13, 2021, Gibbons filed a Notice of Appeal with this court.

On appeal, she raises the following assignments of error:

[1.] The common pleas court failed to consider any of appellant's legal and equitable arguments other than whether the appellee's determination was supported by any reliable, probative, and substantial evidence.

[2.] The common pleas court erred and abused its discretion in affirming the February 23, 2021 Adjudication Order of appellee, which indefinitely suspended appellant's dental hygienist license for a period [of] no less than six months and placed excessive requirements on the reinstatement thereof, when the Order was not supported by reliable, probative, and substantial evidence.

{¶18} "[A]ny party adversely affected by any order of an agency issued pursuant

to an adjudication * * * revoking or suspending a license * * * may appeal from the order

7

of the agency to the court of common pleas of the county in which * * * the licensee is a resident." R.C. 119.12(A)(1). "The court may affirm the order of the agency complained of in the appeal if it finds, upon consideration of the entire record and any additional evidence the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law." R.C. 119.12(M); *Capital Care Network of Toledo v. Ohio Dept. of Health*, 153 Ohio St.3d 362, 2018-Ohio-440, 106 N.E.3d 1209, ¶ 24.

{¶19} "This standard requires two inquiries: a hybrid factual/legal inquiry and a purely legal inquiry." *Ohio Historical Soc. v. State Emp. Relations Bd.*, 66 Ohio St.3d 466, 470, 613 N.E.2d 591 (1993). "[A]n agency's findings of fact are presumed to be correct and must be deferred to by a reviewing court unless that court determines that the agency's findings are internally inconsistent, impeached by evidence of a prior inconsistent statement, rest upon improper inferences, or are otherwise unsupportable." *Id.* at 471; *Univ. of Cincinnati v. Conrad*, 63 Ohio St.2d 108, 111, 407 N.E.2d 1265 (1980) ("[w]here the court, in its appraisal of the evidence, determines that there exist legally significant reasons for discrediting certain evidence relied upon by the administrative body, and necessary to its determination, the court may reverse, vacate, or modify the administrative order"). "[W]hile the reviewing court must defer to the lower tribunal's findings of fact, it must construe the law on its own." *Historical Soc.* at 471; *VFW Post 8586 v. Ohio Liquor Control Comm.*, 83 Ohio St.3d 79, 82, 697 N.E.2d 655 (1998) ("[w]ith respect to purely legal questions * * *, the court is to exercise independent judgment"). "And where the agency's decision is supported by sufficient evidence and the law, the

8

common pleas court lacks authority to review the agency's exercise of discretion, even if its decision is 'admittedly harsh.'" (Citation omitted.) *Capital Care* at ¶ 25.

{¶20} "In reviewing an order of an administrative agency, an appellate court's role is more limited than that of a trial court reviewing the same order." *Lorain City School Dist. Bd. of Edn. v. State Emp. Relations Bd.*, 40 Ohio St.3d 257, 260-261, 533 N.E.2d 264 (1988). "The appellate court is to determine only if the trial court has abused its discretion." *Id.* at 261. "Absent an abuse of discretion on the part of the trial court, a court of appeals may not substitute its judgment for those of the [agency] or a trial court," but "must affirm the trial court's judgment." *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621, 614 N.E.2d 748 (1993).

{¶21} As the holder of a license to practice dental hygiene, Gibbons "is subject to disciplinary action by the state dental board for * * * [the] [v]iolation of any provision of [R.C. Chapter 4715 of the Dental Practice Act] or any rule adopted thereunder." R.C. 4715.30(A)(11). If the board determines that grounds for discipline exist, it may "[p]lace the license * * * on probationary status for such period of time as the board determines necessary." R.C. 4715.30(C)(2). "Where the board places a holder of a license * * * on probationary status * * *, the board may subsequently suspend or revoke the license * * * if it determines that the holder has not met the requirements of the probation or continues to engage in activities that constitute grounds for discipline." R.C. 4715.30(C).

{¶22} Under the first assignment of error, Gibbons argues that the trial court failed to consider the "legal and equitable arguments" she raised. This claim is without merit. The trial court duly acknowledged Gibbons' arguments by providing a detailed summary of the arguments contained in the parties' briefs in addition to the summary quoted above.

9

There is no requirement that the court address each argument with particularity, and we find no abuse of discretion in the court's failure to do so. Even considering these arguments, the court's determination that the Adjudication Order is supported by reliable, probative, and substantial evidence and in accordance with the law is sound.

{¶23} Gibbons argues the trial court should have exercised its "broad equitable authority" to "disallow [the Board] from enforcing the Consent Agreement and subsequent addendums against [her]." Appellant's Brief at 6. Under basic principles of equity, however, the trial court is precluded from exercising the broad equitable powers claimed for it by Gibbons. Under the principle of "equity follows the law" (*aequitas sequitur legem*), "[w]here a right is statutory it should not be extended beyond the scope of the statute, however inequitable the result may seem." *Civil Serv. Personnel Assn., Inc. v. Akron*, 48 Ohio St.2d 25, 27, 356 N.E.2d 300 (1976). "When the rights of parties are clearly defined and established by law (especially when the source of such definition is through constitutional or statutory provision) the maxim 'equity follows the law' is usually strictly applied." *Id.* In the context of administrative appeals under R.C. 119.12, the scope of the common pleas court's authority to review adjudications is clearly defined as the preceding authority demonstrates. When the order of an agency is duly supported by reliable, probative, and substantial evidence, the court "can only affirm and cannot reverse, vacate or modify" regardless of how harsh or inequitable the result may seem. *Henry's Cafe, Inc. v. Bd. of Liquor Control*, 170 Ohio St. 233, 236, 163 N.E.2d 678 (1959).

{¶24} We further note that the "purely legal inquiry" aspect of the trial court's review is limited "[t]o the extent that an agency's decision is based on construction of the state or federal Constitution, a statute, or case law." *Ohio Historical Soc.*, 66 Ohio St.3d

10

at 471, 613 N.E.2d 591. It is not enough to merely raise a "legal" argument, the argument must involve the construction or interpretation of law in order for the trial court to engage in an independent review of the agency's determination.

{¶25} We shall now consider the specific "legal and equitable" arguments Gibbons claims were disregarded. She claims that she was denied due process, i.e., the opportunity to be heard, before she was placed on probationary status through the Consent Agreement. *Haj-Hamed v. State Med. Bd. of Ohio*, 10th Dist. Franklin No. 06AP-351, 2007-Ohio-2521, ¶ 53 ("a licensed professional * * * [has] a protected property interest in the practice of medicine and surgery"). This argument is belied by the provisions of the Consent Agreement in which she acknowledged "being fully informed of her rights afforded under Chapter 119, Ohio Revised Code, including the right to representation by counsel and the right to a formal adjudication hearing on the issues considered herein." However, "in consideration of the BOARD suspending the disciplinary proceeding, MS. GIBBONS knowingly and voluntarily agrees to the * * * terms, conditions, and limitations" of the Agreement. It is not the case that Gibbons was denied the right to be heard, but that she agreed to forego exercising that right in exchange for the suspension of the disciplinary proceeding. *Compare State ex rel. Mathur v. Ohio State Dental Bd.*, 10th Dist. Franklin No. 04AP-764, 2005-Ohio-1538, ¶ 15 ("[h]aving bargained away his right to apply and to obtain a hearing [by entering a consent agreement with the board], Mathur cannot now avail himself of the statutory protections contained in R.C. Chapter 119, unless he is able to establish that the consent agreement is invalid").

{¶26} In the Agreement, Gibbons admitted that "the BOARD has evidence to

11

Case No. 2021-L-128

prove by a preponderance of the evidence that she employed fraud or material deception in applying for or obtaining a dental hygiene license, in violation of R.C. section 4715.30(A)(1)" and "evidence to prove by a preponderance of the evidence that she has an inability to practice under accepted standards of the profession because of dependence on alcohol or other drugs, or excessive use of alcohol or other drugs, in violation of R.C. section 4715.30(A)(10)." Contrary to these admissions, Gibbons maintains that the Board "had no evidence to prove any of these statutory violations and was merely using their leverage to strongarm [her] into the Consent Agreement." Appellant's Brief at 8. This is not an argument that can be fairly raised. By accepting the Agreement, the Board's investigation was suspended, and, in the absence of an adjudicatory hearing, there was no need or opportunity to present evidence. Nevertheless, the issues were addressed in the four days of hearings on Gibbons' violations of the Agreement and Addendum. That Gibbons knowingly provided a false response as to her criminal history in her License Application is uncontroverted, although she denies having the intent to deceive the Board. With respect to her inpatient treatment for alcohol at Glenbeigh, Gibbons described the treatment as being for "depression and grief." Yehnert testified that Gibbons never executed a release for the Glenbeigh records despite being requested to do so.

{¶27} Consent agreements are expressly authorized by the Dental Practice Act when "the [dental] board determines that there are reasonable grounds to believe that a violation of [the Act] has occurred." R.C. 4715.03(D). The usefulness and validity of such agreements have been recognized by the courts. *Mathur* at ¶ 16. Moreover, the admissions contained therein have been deemed probative evidence of the matter at

12

issue. *Chlysta v. Ohio State Dental Bd.*, 174 Ohio App.3d 465, 2007-Ohio-7112, 882 N.E.2d 935, ¶ 4-5 and 30-32 (11th Dist.); *compare* R.C. 4731.22(C), applicable to proceedings before the medical board ("[a] consent agreement * * * shall constitute the findings and order of the board with respect to the matter addressed in the agreement"). Thus, presuming the validity of the Agreement, Gibbons' admissions to violating the Act were binding on her.

{¶28} Gibbons does challenge the validity of the Agreement itself on the grounds that she "clearly lacked the ability and knowledge to fully appreciate the Consent Agreement terms to which she was allegedly bound." Appellant's Brief at 10. She further claims she was only "given three (3) days to review the Agreement, lacks any legal training, had no legal counsel, and was presented with misleading statements by * * * Yehnert." Appellant's Brief at 12.

{¶29} Again, the matter was addressed during the hearings. The Hearing Examiner noted that, according to her own testimony, Gibbons had the opportunity to review the Agreement with her attorney prior to signing it and understood its terms. Gibbons also discussed the Agreement with Yehnert prior to signing. According to the transcripts of those conversations, Yehnert advised Gibbons: "Before you sign it, we want to make sure you understand every bit of it, and if you have questions, ask about it. But once you sign it, then you need to be aware of the fact you know these requirements are there, and if you don't abide by them, then you are considered in violation of your Consent. * * * So, you know you got to really make sure you understand it all and ask your uncle [the attorney] * * * take a look at it." Two days later, Gibbons assured Yehnert: "I've read this [the Agreement] several times."

13

Case No. 2021-L-128

{¶30} The Hearing Examiner summarized the circumstances in which Gibbons signed the agreement as follows: "Ms. Gibbons was apparently anxious and felt 'pressured' to get [the Agreement] before the Board during its May meeting a week later because she had pending job offers dependent on getting the Agreement executed and receiving her license to practice dental hygiene. * * * She testified that this pressure was amplified by advice from her attorney-uncle that fighting the potential disciplinary charges would take too long. * * * Ms. Yehnert made it clear in her testimony that there was no mandate to present the Agreement at the May meeting. If [Gibbons] did not understand any term of the proposed Agreement, she would have been given whatever additional time necessary to study the Agreement and discuss it with her attorney."

{¶31} Based on the evidence before him, the Hearing Examiner concluded that the Board had established that Gibbons' license was placed on probationary status pursuant to R.C. 4515.30(C)(2) and the terms of the Consent Agreement and Addendum. Inasmuch as this evidence was reliable, probative, and substantial, the trial court had to affirm the Examiner's conclusion as Gibbons' probationary status and the validity of the Consent Agreement were factual rather than legal issues. In doing so, we find that the trial court did not abuse its discretion.

{¶32} Gibbons' final argument under this assignment is that the conditions of her suspension, that she complete a treatment program for chemical/alcohol dependency and that she abstain from the use of alcohol, violates her right to refuse medical treatment. The Ohio Supreme Court has recognized the "right to refuse medical treatment [as] a fundamental right in our country," although "it must yield when outweighed by a compelling governmental interest." *Steele v. Hamilton Cty. Community Mental Health*

14

*Bd.*, 90 Ohio St.3d 176, 180-181, 736 N.E.2d 10 (2000). Assuming, arguendo, that treatment for alcohol dependency and abstinence constitute medical treatment, the Ohio Supreme Court has also recognized that "the States have a compelling interest in the practice of professions within their boundaries, and * * * they have broad power to establish standards for licensing practitioners and regulating the practice of professions." *Ohio State Bar Assn. v. Burdzinski, Brinkman, Czarzasty & Landwehr, Inc.*, 112 Ohio St.3d 107, 2006-Ohio-6511, 858 N.E.2d 372, ¶ 11, quoting *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 792, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975). Here, the compelling interest is vindicated by the report of Ryan Mekota, Psy.D., who evaluated Gibbons. He diagnosed her with mild alcohol use disorder although not as dependent. Nonetheless, he recommended abstinence from alcohol "for the near future" but felt that "[t]otal abstinence may be excessive in the context of Ms. Gibbons' individual circumstances and history." For the present, he encouraged "an intensive outpatient program (IOP) level of treatment" that is "abstinence-only" and includes "random urine toxicology screens * * * to better ensure sobriety." Regardless of how closely the Board's conditions correlate with Dr. Mekota's recommendations, Gibbons' right to bodily autonomy was not infringed.

{¶33} Before concluding the first assignment of error, two other matters should be clarified. First, the trial court had both the jurisdiction to review the legality of the Consent Agreement, and also the obligation to do so. The Board argued that "[t]o the extent that the Consent Agreement is an adjudication order under Chapter 119, Ms. Gibbons would have been required to file a notice of appeal within fifteen days after the Board's Order was ratified and mailed to her in 2015." Brief of Appellee at 13. Because she failed to do so, the trial court was without jurisdiction to review the legality of the Consent Agreement.

15

The Consent Agreement, however, was not an "adjudication" for the purposes of R.C. Chapter 119, defined as "the determination by the highest or ultimate authority of an agency of the rights, duties, privileges, benefits, or legal relationships of a specified person, but does not include the issuance of a license in response to an application with respect to which no question is raised, nor other acts of a ministerial nature." R.C. 119.01(D). The Consent Agreement was the mutual assent of the parties to the terms and conditions in which Gibbons would be issued a license. Although the Agreement had to be ratified by "[a] concurrence of a majority of the members of the [dental] board," the Agreement took the place of a determination by the board as explained above. *Stahl v. Ohio State Dental Bd.*, 44 Ohio App.3d 26, 540 N.E.2d 755 (1988) (the parties "entered into a consent agreement" and, therefore, "nothing was adjudicated").

{¶34} Inasmuch as Gibbons' license was being suspended for violating the probationary terms contained in the Agreement and Addendum, the validity of those agreements was in issue. There are several cases in which disciplinary actions have been overturned because the agreement establishing the terms that were violated was found invalid, *e.g. Mack v. Ohio State Dental Bd.*, 11th Dist. Lake No. 2001-L-103, 2003-Ohio-475, ¶ 32; *Reinglass v. State*, 5th Dist. Stark No. CA-7321, 1988 WL 38041, *2, and more cases where the validity of the agreement is affirmed. Both the Hearing Examiner and the trial court commented that they lacked jurisdiction to consider Gibbons' Motion to Vacate the Agreement and Addendum. We do not find this to be reversible error as both the Examiner and the court make clear that the jurisdiction being referred to is the ability to alter or renegotiate the terms of the Agreement, which Gibbons has requested during the hearings. The Examiner stated "[a]ny request to modify or terminate the terms of

16

those documents should be made to [the Board] and/or its enforcement staff." Similarly, the court qualified its disclaimer of jurisdiction by stating that the "Board has the authority to oversee licensing for dental hygienists, which includes Consent Agreements and Addendums thereto as a condition of licensing" while it "has no authority to require the State Dental Board to renegotiate with [Gibbons] now." As demonstrated above, the Examiner received evidence regarding Gibbons' understanding of and consent to the terms of the Agreement and affirmed that she was duly placed on probationary status under the terms of the Agreement and Addendum.

{¶35} The first assignment of error is without merit.

{¶36} Under the second assignment of error, Gibbons claims neither her conduct nor her circumstances "warrant an indefinite suspension [of her license], constant supervision, or complete abstention from alcohol." Brief of Appellant at 13. Her issues with alcohol arise not from dependency but from mental health issues, specifically with coping skills and the ability to deal with stress. Moreover, she "has had **_zero_** complaints against her in the years she has been practicing dental hygiene," "no accusations that [she] has worked while intoxicated or presented any risk to patients," and "no other accusations of misconduct [have been] made against [her]." Appellant's Reply Brief at 7.

{¶37} Rather than challenging the findings on which the probationary violations were based, these arguments address the discipline imposed by the Board, essentially claiming that it was not proportionate to the seriousness of her conduct or the risk of harm that she posed to patients. Such arguments, however, have been precluded by the Ohio Supreme Court which has ruled that, in administrative appeals pursuant to R.C. Chapter 119, "the Court of Common Pleas has no authority to modify a penalty that the agency

17

was authorized to and did impose, on the ground that the agency abused its discretion." *Henry's Cafe*, 170 Ohio St. 233, 236, 163 N.E.2d 678, at paragraph three of the syllabus. This holding has been reaffirmed by the Ohio Supreme Court and recognized as controlling by the courts of appeal. *Dept. of Liquor Control v. Santucci*, 17 Ohio St.2d 69, 70, 246 N.E.2d 549 (1969) ("[o]f course, under the decision in the case of *Henry's Cafe* * * *, the Court of Common Pleas lacked authority to modify the penalties imposed by the commission"). "Neither a common pleas court nor an appellate court has the authority to modify a penalty imposed by a state agency unless it is unauthorized." *Raig v. Ohio Real Estate Comm*, 11th Dist. Portage No. 2019-P-0081, 2019-Ohio-5415, ¶ 11; *Deanru, LLC v. Ohio Liquor Control Comm.*, 10th Dist. Franklin No. 17AP-777, 2018-Ohio-2854, ¶ 12 ("[p]ursuant to [*Henry's Cafe*], we have consistently held that we lack authority to modify a penalty lawfully imposed by the commission, even where it is argued that the penalty is unduly harsh"); *Jaroscak v. Ohio Bd. of Pharmacy*, 9th Dist. Lorain No. 20CA011762, 2021-Ohio-3867, ¶ 21 ("[t]his Court previously has considered arguments [that the permanent revocation of his license is "too harsh a penalty" given his circumstances]" but concluded "we lack authority to modify or decline to follow precedent established by the Ohio Supreme Court").

{¶38} That testing positive for alcohol metabolites, refusing the take the PEth test, and failing to notify the Board of the change in her employment violated the Agreement and Addendum cannot be reasonably disputed. Having determined under the first assignment of error that Gibbons was lawfully placed on probation and that reliable, probative, and substantial evidence supported the validity of the Agreement and Addendum, the trial court was well within its discretion to affirm the Board's Order.

18

Case No. 2021-L-128

{¶39} We note that Gibbons' disciplinary issues, at this point, do not stem solely from her relationship with alcohol, but also from her willful disregard of the Board's directives. Apart from or irrespective of her continuing use of alcohol, she lied on her License Application; she failed to provide a copy of the Consent Agreement to her employer; she failed to advise the Board of the change in her employment status; she refused PEth testing; and she failed to produce quarterly reports per the terms of the Agreement (although the Board has never sought to impose sanction for this failure). That alcohol may not be the underlying issue between Gibbons and the Board is demonstrated by the following hearing testimony:

> Attorney: Ms. Gibbons, do you believe that you can comply with the current Consent Agreement?
>
> Gibbons: I want to renegotiate it.
>
> * * *
>
> Attorney: So, your answer is "no," that you do not plan to comply with the current Consent and the Addendum?
>
> Gibbons: I signed the first Consent under extreme duress and stress, and I want to renegotiate the terms of it.
>
> * * *
>
> Examiner: I believe it calls for a "yes" or "no" response, and I would direct the witness to respond accordingly.
>
> Gibbons: No.

{¶40} The second assignment of error is without merit.

{¶41} For the foregoing reasons, the Judgment of the Lake County Court of Common Pleas, affirming an adjudication of the State Dental Board, suspending Gibbons' license to practice dental hygiene upon conditions, is affirmed. Costs to be taxed against

19

Case No. 2021-L-128

the appellant.


CYNTHIA WESTCOTT RICE, J.,

MARY JANE TRAPP, J.,

concur.

Case No. 2021-L-128